[No. 26135.   *En Banc.*   July 9, 1936.]

E. ANDERSON, *Appellant,* v. EARL MILLIKIN, *as Auditor of King County, Respondent.*[1]

*Lyle L. Iversen, Allen Spratlin,* and *Thomas C. Kinney,* for appellant.

*Warren G. Magnuson* and *Edwin C. Ewing,* for respondent.

*Griffiths & Cluck, E. W. Anderson, Yantis & Brodie,* and *W. Le Roy LaFollette, amici curiae.*

TOLMAN, J.—The plaintiff, by his amended complaint, alleges that he is a qualified voter, a member of the Republican party and desirous of advancing its principles, and as such he seeks to restrain the defendant, as county auditor, from proceeding officially in accordance with the terms of chapter 26, Laws of 1935, p. 60, upon the theory that the act mentioned is unconstitutional in a number of particulars, some of which will be referred to more specifically as we proceed.

A demurrer was interposed, which, after argument, was sustained by the trial court. The plaintiff elected to stand on his amended complaint and a judgment of dismissal followed, from which he has appealed to this court. No formal assignments of error are made, but various arguments are advanced for the purpose of establishing that the measure known as the "Blanket Primary Act" denies rights which are guaranteed by both the Federal and the state constitutions.

Chapter 26, Laws of 1935, p. 60, is entitled:

"ELECTIONS. BLANKET PRIMARY BALLOT.

"AN ACT relating to primary elections, providing for a Blanket Primary Ballot, amending sections 5185, 5187, 5189 and 5195 of Remington's Compiled Statutes of 1932, and repealing all laws in conflict therewith."

Section 1, p. 60, of the act provides that § 5185 of Remington's Compiled Statutes be amended and then

proceeds to set forth the section as amended. Section 2, p. 60, in the same manner amends § 5187 of Remington's Compiled Statutes, and §§ 3 and 4, p. 63, in the same manner amend §§ 5189 and 5195 of Remington's Compiled Statutes. Section 5, p. 64, of the act reads:

"All laws or parts of laws in conflict or inconsistent with this act in any particular, or any part thereof, are hereby repealed, but it is expressly declared that the purposes of this act shall be construed so as to allow all properly registered voters to vote for their choice at any primary election, for any candidate for each office, regardless of political affiliation and without a declaration of political faith or adherence on the part of the voter." (Rem. 1935 Sup., § 5195-1 [P. C. § 2229a].)

It is not necessary for present purposes to set forth in detail the previous legislation upon the same subject which is thus amended. The objects and purposes to be obtained are sufficiently revealed by § 5, p. 64, of the 1935 act, which we have quoted, and in giving effect to § 5 and thus carrying out the purposes of the legislature, we are required by our recognized rules of construction to regard as repealed by necessary implication anything and everything contained in the prior acts of the legislature which would defeat the avowed purpose of permitting all properly registered voters to vote for their individual choice as to each office at any primary election, regardless of political affiliation and without a declaration of political faith. This declaration of policy clearly indicates the purpose of affording secrecy to the individual voter as to his party affiliations as well as to his choice of individual candidates. That purpose, being a salutary one which accords with the spirit of our constitution, must be sustained unless, very clearly, constitutional rights are denied.

■ The sections amended are a part of our direct primary law, and that law still stands except as amended or repealed by the 1935 act. This court, in its previous decisions sustaining the direct primary law, has met and answered most of the objections which are now presented.

*State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728, exhaustively treats of and refûtes a number of the arguments here advanced, and that case may well be read in connection with what is here said. We cannot review the various arguments there advanced or quote from its well-considered language at length, but must be content with the following brief quotations which go to the very gist of the arguments now advanced:

"The last general objection to be noticed is that the law tends to destroy political parties. Counsel confess that they can find no specific provision of the constitution on which to base the contention, but they assert the general utility and necessity of parties, and argue therefrom that legislation tending to destroy them must receive the condemnation of the courts. It has seemed to us, however, that this is a political rather than a judicial question, and that an appeal from the legislative decision must be made to the people rather than to the courts. . . .

"So long as voting is by ballot, an official ballot is a convenience if not a necessity, and some authority vested somewhere in government must determine the names which shall appear on that ballot, and those names must necessarily be few in number; and, we repeat, any reasonable method prescribed by the law-making power which accomplishes this result must be sustained by the judicial department of government. The courts have no concern with its wisdom or policy."

In *State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925, this court said:

"Recurring again to fundamental principles, the whole argument in this behalf is met by the undisputed proposition that the constitution takes no concern of political parties. The people, in adopting the constitutions, both state and Federal, wisely considered that political parties are evanescent things, born of political emotions and of uncertain—sometimes precarious—tenure of life, and went no further than to protect the elector in his right to cast a ballot; not a coerced party ballot, but for the candidate of his choice, whether he be upon one ballot or another. . . .

"Political parties being neither mentioned, protected, nor favored in the constitution, a law will not be held to be unconstitutional, although in its workings it may destroy these organizations. If a party is to be protected at all hazards, the Australian ballot, the primary law, and the commission plan of government must all fall upon the first attack, for the working, if indeed it is not the design, is to break down parties and put the burden entirely upon the elector. . . .

"Finding no guaranty, express or implied, in favor of either a candidate or a party in the constitution, it follows that he or his party can claim no greater rights than the voter himself. The fountain cannot rise higher than its source."

See, also, *State ex rel. Rogers v. Howell,* 92 Wash. 381, 159 Pac. 118, and from other states: *Koelsch v. Girard,* 54 Ida. 452, 33 P. (2d) 816; *Dupre v. St. Jacques,* 51 R. I. 189, 153 Atl. 240; *Sarlls v. State,* 201 Ind. 88, 166 N. E. 270, 67 A. L. R. 718; *State ex rel. Duniway v. Portland,* 65 Ore. 273, 133 Pac. 62; *State ex rel. Weinberger v. Miller,* 87 Ohio St. 12, 99 N. E. 1078, Ann. Cas. 1913 E, 761, 44 L. R. A. (N. S.) 712; *Winston v. Moore,* 244 Pa. 447, 91 Atl. 520, Ann. Cas. 1915C, 498, L. R. A. 1915A, 1190; and *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N. W. 961.

Without detailing each argument presented or attempting to answer it specifically, it may be safely

said that these authorities fully meet and amply refute every attack which is here made upon the act of 1935, save possibly one which, because of its novelty, perhaps requires more specific treatment.

Rem. Rev. Stat., § 5198 [P. C. § 2243], provides for the election of precinct committeemen for each party participating in the September primaries, and that "The one having the highest number of votes shall be such committeeman of such party for such precinct."

This section was not amended by the act of 1935, but if anything in it necessarily conflicts with the purpose of the amending act, such conflicting part would be inconsistent with the amending act and would necessarily be repealed by the repealing provision already quoted. We are not now convinced that there is a necessary conflict, hence, we pass the question of repeal of the provision for the election of party precinct committeemen.

It is now argued that, without the party test, which was abolished by the act of 1935, those voters so disposed may elect Democrats as Republican precinct committeemen and *vice versa,* with a result that the voters of one party may capture the governing body of an opposing party and thus obtain and take from it its funds and property and likewise thus prevent its support and advocacy of those political principles for the furtherance of which it exists.

Of course, under the provisions of Rem. Rev. Stat., § 5170 [P. C. § 2161], no person may lawfully join in the nomination of more than one precinct committeeman, and it is not to be presumed that any voter will abandon his right to participate in the selection of the committeeman of his own party in order to foist an unwanted individual upon a party to which he is opposed. But, whether so or not, the provisions now

under consideration apply equally to all parties who may be affected thereby, and thus there is no discrimination in favor of or against any. If, as we have already said, "political parties are neither mentioned, protected or favored in the constitution," *(State ex rel. Shepard v. Superior Court, supra)*, then, if all are treated alike, none has any just cause of complaint.

■ Moreover, the statute, as we read it, makes no attempt to control the inherent power of a political party to adopt principles and to require its members, and especially its officials, to give adherence thereto; nor does the statute deny the inherent right of a political party to expel any official whose actions and beliefs are antagonistic to its announced principles. In this inherent right of a political party to expel or refuse to seat any committeeman who does not subscribe to the party principles, we see a complete defense against the feared assault upon party integrity. This question is controlled by the authorities already cited, and, therefore, the act of 1935 does not violate either the Federal or the state constitution.

The judgment is affirmed.

MILLARD, C. J., MAIN, GERAGHTY, HOLCOMB, BLAKE, and BEALS, JJ., concur.

MITCHELL, J., concurs in the result.

STEINERT, J. (concurring)—I concur with the majority in all that is stated in the opinion, except the next to last paragraph thereof, which refers to the inherent right of a political party to expel or refuse to seat any committeeman who does not subscribe to the party principles. Conceding such right, generally, I fail to see how it is possible to enforce such right under the existing law pertaining to elections.