[No. 45503. En Banc. June 5, 1980.]

EDWARD HEAVEY, ET AL, *Appellants,* v. BRUCE K. CHAPMAN, ET AL, *Respondents.*

*Bernard J. Heavey, Jr.,* and *Joseph T. Moynihan,* for appellants.

*Slade Gorton, Attorney General,* and *Carol A. Smith, Assistant,* for respondents.

*Robert H. Aronson* on behalf of the University of Washington School of Law and *Wallace M. Rudolph* on behalf of the University of Puget Sound School of Law, amici curiae.

DOLLIVER, J.—This is the second case to come before us which raises constitutional objections to provisions of the state election laws as they are alleged to conflict with the "Charter of the Democratic Party of Washington" adopted by the Washington State Democratic Convention in Olympia on June 12, 1976. The first case, *Marchioro v. Chaney,* 90 Wn.2d 298, 582 P.2d 487 (1978), held the equal sex representation requirements for major political party state committees to be valid. Our decision was subsequently upheld unanimously by the United States Supreme Court. *Marchioro v. Chaney,* 442 U.S. 191, 60 L. Ed. 2d 816, 99 S. Ct. 2243 (1979).

This case raises the question of whether the blanket primary (RCW 29.18.200) and those statutes implementing it (RCW 29.30.010, .030) unconstitutionally restrict the plaintiffs' right of association under the state and federal constitutions. We hold they do not and affirm the trial court.

The blanket primary was adopted by the legislature in Laws of 1935, ch. 26, p. 60, and immediately subjected to challenge on constitutional grounds. In *Anderson v. Millikin,* 186 Wash. 602, 59 P.2d 295 (1936), the court rejected all claims of constitutional infirmity and upheld the statutes. The plaintiffs correctly point out that *Anderson* was decided prior to the recognition by this court in *Marchioro* and by the United States Supreme Court in *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958), of a constitutional right of freedom of association. Therefore, while *Anderson* retains its vitality as to those constitutional issues which it discussed, in view of the subsequent articulation of a constitutional right to freedom of association, that issue must be considered in this case. *See generally The Constitutionality of Non-Member Voting in Political Party Primary Elections,* 14 Willamette L.J. 259 (1978).

■ In *Marchioro,* we said, at page 309:

In *Storer v. Brown,* 415 U.S. 724, 729, 39 L. Ed. 2d 714, 94 S. Ct. 1274 (1974), the court stated, "substantial burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First and Fourteenth Amendments and under the Equal Protection Clause unless essential to serve a compelling state interest." While the defendants have the burden to show a compelling state interest, proof of a substantial burden on the right to associate for political purposes is a prerequisite to finding a violation of plaintiffs' associational rights. This burden of proof is on the plaintiffs. *American Party v. White,* 415 U.S. 767, 790, 39 L. Ed. 2d 744, 94 S. Ct. 1296 (1974); *Fahey v. Darigan,* [405 F. Supp. 1386 (D.R.I. 1975)]. Thus, we must first inquire as to whether plaintiffs have shown a substantial burden on their association for political purposes.

*See Marchioro v. Chaney,* 442 U.S. 191, 60 L. Ed. 2d 816, 99 S. Ct. 2243 (1979).

■ Have plaintiffs shown a substantial burden? Not only have they not shown a substantial burden, but they concede they cannot do so. Plaintiffs seek to avoid establishing a substantial burden by asserting the court places a

"burden of negative proof" on them to which they cannot respond because voter ballots are made secret by another separate state action, the secret ballot. Plaintiffs suggest we abandon the substantial burden test and instead adopt what they term the "modified review standard". *See* Note, *Primary Elections: The Real Party in Interest,* 27 Rutgers L. Rev. 298 (1974). The modified review standard has not been adopted by the United States Supreme Court or by this court, and we decline the invitation to embrace it in this case. Although, as plaintiffs complain, it may be difficult or even impossible to assume the burden of proof in this case, at the very least those who would overturn statutes on constitutional grounds should offer some evidence they have been harmed. Mere assertions of injury do not make for the violation of constitutional rights.

We believe the failure of plaintiffs even to attempt to show a substantial burden to their right of association is dispositive of the case. Nonetheless, consideration should be given to two recent cases cited by plaintiffs which deal with primary elections: *Rosario v. Rockefeller,* 410 U.S. 752, 36 L. Ed. 2d 1, 93 S. Ct. 1245 (1973) and *Nader v. Schaffer,* 417 F. Supp. 837 (D. Conn. 1976), *aff'd,* 429 U.S. 989, 50 L. Ed. 2d 602, 97 S. Ct. 516 (1976). Both of these cases concerned the exclusion by statute of voters from participating in party primaries. In neither case was the situation similar to this where the statutes in issue do not restrict but rather open the primary for full participation by all citizens. As pointed out in *Nader,* there are a number of actions a state legislature may take to preserve "'the integrity of the electoral process'". *Nader,* at 846. *See Rosario v. Rockefeller, supra.* But there is no constitutional requirement that these actions be taken; rather it is not unconstitutional if they are taken.

Both *Rosario* and *Nader* challenged a primary system which *restricted* participation in primary elections and not, as here, a system which encourages and facilitates participation. This distinction was commented on in *Nader* where the court said, at pages 849–50:

The comparative merits of various forms of primary election systems have been widely debated in this presidential election year. In particular, the "open" and "crossover" primaries, which permit independents and/or members of other parties to participate in a given party's primary, have been the subject of controversy.

A state may legislate to prevent the perceived evils of crossover voting, *e.g.*, *Rosario v. Rockefeller*, [410 U.S. 752, 36 L. Ed. 2d 1, 93 S. Ct. 1245 (1973)], but several states permit crossover voting in their primaries. Others have provision for primaries which allow participation by independents and members of other parties. There is no suggestion that such a clause makes the election laws unconstitutional, nor is it a mandatory prerequisite to constitutionality that independent, non–member electors be permitted to vote in a party's primary. The Connecticut General Assembly has adopted statutes governing political party primaries which it considers best meet the needs of the State. The laws are not invidiously discriminatory but apply to all alike. The legislatures of "[t]he states have broad discretion in formulating election policies."

(Footnotes and citations omitted.)

*Nader* and *Rosario* hold that a state *may*, if it chooses, institute a closed primary system. *But see Kusper v. Pontikes*, 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (1973). *Nader* and *Rosario* neither establish any mandatory duty that a state *must* have closed primaries nor do they forbid a blanket primary.

Plaintiffs argue the Democratic Party is a private party and a voluntary association. The last time this assertion was seriously advanced was in *Smith v. Allwright*, 321 U.S. 649, 88 L. Ed. 987, 64 S. Ct. 757 (1944). In *Smith*, the Supreme Court struck down the "white primary" and in doing so rejected arguments strikingly similar to those advanced by plaintiffs.

In *Marchioro v. Chaney*, 90 Wn.2d 298, 309, 582 P.2d 487 (1978), we said:

No case of the United States Supreme Court has extended the right of association in political affairs to

areas outside of racial discrimination or participation in the electoral process. Furthermore, there seems to be little inclination to expand the doctrine to other aspects of the political process. As *Storer v. Brown* [415 U.S. 724, 39 L. Ed. 2d 714, 94 S. Ct. 1274 (1974)], at 730 states, "It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under our cases".

It is not alleged the blanket primary is either racially discriminatory or impedes participation in the electoral process.

Finally, even though plaintiffs' case fails since they have shown no substantial burden to their associational rights, it is important to indicate certain compelling state interests which support a blanket primary. Among these are: allowing each voter to keep party identification, if any, secret; allowing the broadest possible participation in the primary election; and giving each voter a free choice among all candidates in the primary. As stated in RCW 29.18.200, the purpose of the statute is to allow

All properly registered voters [to] vote for their choice at any primary election, for any candidate for each office, regardless of political affiliation and without a declaration of political faith or adherence on the part of the voter.

Moreover, the state interest in allowing voters to support the candidates of their choice in a primary can be achieved only by the blanket primary which allows complete voter freedom in alternating votes between parties, since an open primary, on the other hand, restricts a voter to candidates of only one party. The blanket primary is the least drastic means available to promote this legitimate state interest.

It may be the blanket primary has defects and should be corrected, amended, or even repealed. The appropriate forum for this enterprise is either by action of the legislature or by popular initiative, not this court. *See State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 P. 728 (1908).

Affirmed.

ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HICKS, and WILLIAMS, JJ., concur.

HOROWITZ, J. (specially concurring)—I agree that the rationale of *Marchioro v. Chaney,* 442 U.S. 191, 60 L. Ed. 2d 816, 99 S. Ct. 2243 (1979), requires us to reject appellants' challenge to the constitutionality of the state's blanket primary law, Laws of 1935, ch. 26, p. 60. Appellants have not, and, indeed, cannot prove a substantial violation of their constitutional rights of association as a result of the existence or operation of this state's blanket primary. Some crossover voting occurs, but we are unable to take judicial notice of its extent so as to determine whether prejudice has resulted. Experience in other states suggests that any crossover voting is minimal and of little effect, as noted by the Wisconsin Supreme Court in *State ex rel. La Follette v. Democratic Party,* 93 Wis. 2d 473, 287 N.W.2d 519, 533–34 (1980). The court rejected a challenge to Wisconsin's open presidential preference primary for the same reason we must reject appellants' challenge. In the absence of a showing of prejudice by the enactment of the state's blanket primary law, we are required to assume that the primary law rests on an appropriate factual basis both with respect to the evils to be remedied and to the benefits to be conferred by the enactment of the statute. Accordingly, I concur in the result reached by the majority.

UTTER, C.J., concurs with HOROWITZ, J.