100 P.3d 349 (2004)
Kathy REID and Stephen K. Eugster, Appellants,
v.
Vicky DALTON, Spokane County Auditor and Spokane County Elections Supervisor; Phil Harris, candidate for political office; Sam Reed, Secretary of State of the State of Washington, Respondents,
Louise Chadez, candidate for political office, Additional Party.
No. 22026-5-III.
Court of Appeals of Washington, Division 3, Panel Eight.
November 9, 2004.
*351 Stephen K. Eugster, Eugster Law Offices PSC, Francis A. Malone, Attorney at Law, Spokane, WA, for Appellants.
Thomas P. Keefe, James H. Kaufman, Attorney at Law, Frank Conklin, Attorney at Law, Spokane, WA, Jeffrey T. Even, Office of Attorney General, Olympia, WA, for Respondents.
SWEENEY, A.C.J.
This is a challenge to an election result by way of a purported declaratory judgment action challenging the constitutionality of Washington's former blanket primary system. We agree with the trial judge that the losing candidate, Stephen K. Eugster, lacked standing to raise the challenge, and that his action was not timely even if he had standing. And we affirm the dismissal of the action as frivolous and award fees on appeal.

FACTS
In 2002, incumbent Spokane County Commissioner Phil Harris was reelected to the office of commissioner for District 3. In the primary election, the Republican Harris ran unopposed. On the Democrat side, Louise Chadez ran against Stephen K. Eugster and out-polled him 7,932 votes to 4,219. The primary result was certified on September 27, 2002. In the general election, Mr. Harris defeated Ms. Chadez. The general election was certified on November 20, 2002.
On December 26, 2002, Mr. Eugster sued in the superior court to invalidate the election. Mr. Eugster filed a "Complaint to Invalidate Election and to Declare Primary Election and Primary Election Law Unconstitutional." The named defendants were Commissioner Phil Harris, Spokane County Auditor Vicky Dalton, and Secretary of State Sam Reed.[1]
Mr. Eugster accused Commissioner Harris of encouraging Republicans to cross party lines and vote for the weaker Democratic candidate in the primary to ensure his easy victory in November. Mr. Eugster alleged this was an unfair election practice and violated his constitutional rights. He alleged the primary election was unconstitutional and asked for a declaratory judgment to that effect under chapter 7.24 RCW (declaratory judgments). The complaint also sought a declaration that the blanket primary law, former RCW 29.18.200 (1990), is unconstitutional on its face and as applied. Mr. Eugster asked the court to invalidate both the primary and the general elections, and asked for his filing fee back.
Mr. Harris's lawyer wrote to Mr. Eugster pointing out that the case against Mr. Harris was futile. Counsel asked Mr. Eugster to dismiss Mr. Harris or face a motion for sanctions on summary judgment. Mr. Eugster refused. Mr. Harris filed an answer asserting that Mr. Eugster lacked standing to invoke superior court jurisdiction; that Mr. Eugster's election challenge was time-barred; and that the issues were res judicata. As to the merits of the claim, Mr. Harris invoked the core speech protections of the First Amendment for his right to urge voters to defeat Mr. Eugster by any lawful means.
Mr. Harris counterclaimed for attorney fees and costs under RCW 4.84.185, the frivolous litigation statute. Mr. Eugster moved to dismiss this claim, invoking Washington's *352 anti-SLAPP[2] statute, RCW 4.24.510. Mr. Harris responded with an anti-SLAPP counterclaim of his own for even more attorney fees. Mr. Harris then moved for summary dismissal of the complaint with terms. Codefendants Dalton and Reed joined in the motion to dismiss, but not the request for terms.
The court held a hearing on the motions to dismiss on March 28, 2003. Mr. Harris alleged that Mr. Eugster had no standing to bring the action because only political parties, not individual party members, can challenge the status of a primary as open or closed. Mr. Harris argued that the quo warranto statutes, former chapter 29.65 RCW, provided the exclusive means for challenging elections. A quo warranto action to contest an election must be filed within 10 days of certification. Former RCW 29.65.020 (1977). Finally, Mr. Harris asserted that the superior court had no jurisdiction to grant the relief sought  a declaratory judgment of invalidity  because the quo warranto procedure requires the court either to confirm the election or to annul it and set it aside. Former RCW 29.65.050 (1965). There is no provision for a declaratory judgment of invalidity that leaves the status quo.
Mr. Eugster conceded more than once in open court that no justiciable controversy was before the court. He knew he had no standing to challenge Mr. Harris's title to the office and conceded that he had no basis for doing so. Report of Proceedings (RP) (Mar. 28, 2003) at 29-30, 37. And he acknowledged that the court could provide no remedy. RP (Mar. 28, 2003) at 35. The sole basis for the lawsuit was Mr. Eugster's insistence that losing candidates ought to have standing to seek an advisory judicial opinion on the fairness of the election. RP (Mar. 28, 2003) at 32, 35. He simply wanted the court to look at the situation. He sought a declaration of what the court might have done in the hypothetical situation that a justiciable controversy had been raised. RP (Mar. 28, 2003) at 36.
It's not a case involving whether there were illegal or unconstitutional activities that took place during the course of an election, the question is title to the office, and the plaintiff does not, plaintiffs do not say that candidate Eugster is entitled to the office. Doesn't say that, can't say that, won't say that, and I, I have made that clear.... [A] court can, I believe, opine as to the quality, let's say, of the election, or even the validity of the election without overturning the election.
RP (Mar. 28, 2003) at 29-30.
Mr. Eugster implied without actually asserting that declaratory judgment actions are not subject to statutes of limitation. RP (Mar. 28, 2003) at 30. He claimed standing based on actual injury allegedly caused by Mr. Harris's campaign strategy. And he alleged that the statutory requirement that primary candidates declare party affiliation diminished the loser's prestige and credibility within the party, thereby infringing on his or her associational rights. RP (Mar. 28, 2003) at 32, 34-36.
Mr. Harris moved to dismiss. The court dismissed the action based on lack of standing and also res judicata because the constitutionality of the blanket primary had already been decided in an unrelated case. RP (Mar. 28, 2003) at 51. The court entered a written order granting the defendants judgment as a matter of law, based on the absence of disputed material facts. The court treated all motions to dismiss as motions for summary judgment and dismissed the entire complaint with prejudice. Clerk's Papers (CP) at 721; RP (Mar. 28, 2003) at 50-51.
The court awarded Mr. Harris attorney fees under the frivolous litigation statute and set a hearing to fix the amount. RP (Mar. 28, 2003) at 52-53. Mr. Eugster claimed statutory immunity from frivolous litigation fees under the anti-SLAPP statute, RCW 4.24.510. He counterclaimed for his own fees under anti-SLAPP. RP (Mar. 28, 2003) at 50. The court rejected this defense and counterclaim. The court denied Mr. Eugster's motions for reconsideration.
*353 Mr. Harris's lawyer, Frank Conklin, submitted a bill for $66,212, the cost of 250 hours at $250 per hour (the rate Mr. Eugster had requested in recent litigation). Mr. Eugster asked for a full evidentiary hearing and the opportunity to cross-examine Mr. Harris and his lawyers to prove that Mr. Harris never signed a contract to pay his lawyers $250 per hour and did not in fact pay that amount. RP (Apr. 21, 2003) at 18. Under a separate case number, Mr. Eugster filed a purported third-party Consumer Protection Act claim against Mr. Conklin for overcharging Mr. Harris. RP (Apr. 21, 2003) at 20. Apparently in that action, Mr. Eugster demanded a jury trial on the issue of Mr. Harris's litigation costs. RP (Apr. 21, 2003) at 20. He also argued that Mr. Conklin's fee demand in this matter was punitive and constituted an unlawful taking of property  both of which entitled him to confront witnesses. RP (May 15, 2003) at 14-15.
The court denied the request for a jury and conducted a customary hearing to fix the amount of fees. The court ultimately approved 195 hours at $225 per hour, for a total of $43,875.

DISCUSSION
Mr. Eugster appeals the order summarily dismissing his declaratory judgment action. He appeals the frivolous litigation fee award, the denial of his anti-SLAPP claim, and the denial of a jury trial on the issue of attorney fees.
The parties devote considerable argument to the merits of the election challenge. But the trial court never ruled on the merits. And with no action by the trial court on the merits of an issue, we have nothing to review. See, e.g., Wash. Pub. Trust Advocates v. City of Spokane, 120 Wash.App. 892, 898, 86 P.3d 835 (2004). The issues before us then are entirely procedural.

DISMISSAL OF DECLARATORY JUDGMENT ACTION
Standard of Review. A court properly grants a motion for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c); Sane Transit v. Sound Transit, 151 Wash.2d 60, 68, 85 P.3d 346 (2004). The material facts here are not in dispute. Our review is therefore de novo.
Standing. The court relied on State ex rel. Quick-Ruben v. Verharen to dismiss this action for lack of standing. State ex rel. Quick-Ruben v. Verharen, 136 Wash.2d 888, 969 P.2d 64 (1998). But it did so only after Mr. Eugster conceded outright that he lacked standing to challenge Mr. Harris's right to hold the office. Id. Now, Mr. Eugster asserts that the trial court did not find he lacked standing. The record reflects otherwise. The judge said: "Accordingly, I can't find that either plaintiff has any standing whatsoever ... to bring this action." RP (Mar. 28, 2003) at 51.
Mr. Eugster claims standing as an individual member of a political party, citing as authority Anderson v. Millikin and Heavey v. Chapman.[3] But in both of those cases a political party was the plaintiff. And so standing was not an issue.
Washington's declaratory judgment act is patterned on the Uniform Declaratory Judgments Act. Ch. 7.24 RCW. A person "whose rights, status or other legal relations are affected by a statute" may have the court determine "any question of construction or validity" of the statute and obtain a "declaration of rights, status or other legal relations" arising under it. RCW 7.24.020; Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 802, 83 P.3d 419 (2004).
But the exclusive method of challenging the holder of public office is by an action in quo warranto. Ch. 7.56 RCW; Quick-Ruben, 136 Wash.2d at 893, 969 P.2d 64. And chapter 7.56 RCW spells out who has standing. Quick-Ruben, 136 Wash.2d at 894, 969 P.2d 64. The public prosecutor has standing to commence an action on behalf of the public. RCW 7.56.010(1); RCW 7.56.020; Green *354 Mountain Sch. Dist. No. 103 v. Durkee, 56 Wash.2d 154, 158, 351 P.2d 525 (1960). Alternatively, an individual who claims title to the unexpired term of the office can ask the court to order the public prosecutor to act. RCW 7.56.020; Quick-Ruben, 136 Wash.2d at 894, 969 P.2d 64.
To establish individual standing, a claimant must plead and prove his own rightful title to the unexpired term of the disputed office. Quick-Ruben, 136 Wash.2d at 896, 969 P.2d 64; State ex. rel. Dore v. Superior Court for King County, 167 Wash. 655, 657-58, 9 P.2d 1087 (1932). Just being a losing candidate is not enough. Quick-Ruben, 136 Wash.2d at 893, 969 P.2d 64.
Election law does not, then, recognize Mr. Eugster's action for declaratory judgment. When a court declares an election invalid, the sole remedy is to void the certification. The election statutes do not provide for a purely declaratory judgment rating the overall fairness of a certified election. Former RCW 29.65.120 (1965). Absent standing, we have no justiciable controversy before us. See Grant County Fire Prot. Dist., 150 Wash.2d at 802, 83 P.3d 419.
Statute of Limitation. A corollary to the standing issue is the quo warranto statute's special 10-day statute of limitations for challenging elections. A special statute of limitation supersedes the general statute. RCW 4.16.005. Here, a different time limitation for challenging the validity of an election is prescribed by statute. A challenge to the validity of a primary election must be brought within 10 days following the certification of the election. Former RCW 29.65.020; former RCW 29.04.030(6) (1977). Any challenge to the September 2002 primary was, then, time-barred when Mr. Eugster filed in December.
Filing an action for declaratory judgment, rather than one for direct relief, did not avoid the statute of limitation. City of Federal Way v. King County, 62 Wash.App. 530, 537, 815 P.2d 790 (1991). Where, as here, a special statute of limitation applies, even a declaratory judgment action is subject to the same statutory limitation. Id.
Statutes of limitation assume particular importance when swift resolution of potential legal uncertainties is in the public interest. Brutsche v. City of Kent, 78 Wash.App. 370, 377, 898 P.2d 319 (1995); Summit-Waller Citizens Ass'n v. Pierce County, 77 Wash. App. 384, 397, 895 P.2d 405 (1995). Here, the limitation period for challenging the results of an election is clear. And the public interest demands that any challenge to the validity of the election be speedily filed and resolved. The trial court acted correctly in upholding the bright-line time limitation of elections challenges. Brutsche, 78 Wash. App. at 377, 898 P.2d 319.

FRIVOLOUS LITIGATION
Mr. Eugster argues that an action cannot be frivolous unless it is baseless in its entirety. He insists (Appellant's Br. at 47-48) that his attack has some legal basis outside of the quo warranto statute. He argues that his challenge to the constitutionality of the state primary election laws had arguable merit because other published cases address primary election procedures. He also contends that, even if the action is frivolous, the fee award here defeats the purpose of the frivolous litigation statute: fees are not supposed to be punitive.
We review an award of fees for frivolous litigation for abuse of discretion. Quick-Ruben, 136 Wash.2d at 903, 969 P.2d 64.
We have already set out the reasons why this action is barred on several grounds  statute of limitations, standing, and power to grant the relief sought. Mr. Eugster conceded that he knew his action was barred and that a declaration undermining Mr. Harris's right to the office was not possible. RP (Mar. 28, 2003) at 29-30, 35, 37. He nevertheless proceeded with his action. The court found that Mr. Harris's counsel informed Mr. Eugster at the outset that Mr. Harris was not a proper party, and asked him to dismiss. But Mr. Eugster refused.
The record substantiates the court's findings. Mr. Eugster agreed that Mr. Harris was not a proper party, but declined to dismiss *355 him as a defendant. RP (Apr. 21, 2003) at 23-24. The court did not abuse its discretion in finding no basis in law or in fact for the filing of this action or in ruling it frivolous.
Timing of Frivolous Action Motion. Mr. Harris filed his frivolous action motion before the court entered its order terminating Mr. Eugster's action. Mr. Eugster contends this was premature.
The determination that an action is frivolous "shall be made upon motion by the prevailing party after ... [an] order of dismissal... or other final order terminating the action as to the prevailing party." RCW 4.84.185. The trial judge read this to mean that the determination shall be made after the final order is entered. Mr. Eugster argues that it means the prevailing party's motion must be filed after the final order.
We interpret statutes to avoid absurd results. State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990). Of the two interpretations here, the trial judge's makes sense. An award for a frivolous action cannot be made until all the facts are in. But the timing of the court's ruling, so long as it follows the hearing, is wholly unaffected by the date the motion is filed.
Due Process in Determining Fees. Mr. Eugster next contends that a statutory attorney fee award constitutes the taking of property as defined by the constitution and requires a jury trial. It does not. And the court can and does award statutory attorney fees without a jury. Colarusso v. Petersen, 61 Wash.App. 767, 769, 812 P.2d 862 (1991). The trial court here held an evidentiary hearing on the question of reasonable fees. Mr. Eugster had the opportunity to challenge the attorney fees documentation. This was sufficient due process of law on this dispute.
Mr. Eugster's sole citation to authority for the right to a jury is a Georgia case. Cohen v. Feldman, 219 Ga.App. 90, 91, 464 S.E.2d 237 (1995). But that case simply holds that the party against whom fees are awarded must have the opportunity to contest the necessity of the legal services provided and the reasonableness of the fees claimed for those services. Id. at 91-92, 464 S.E.2d 237. Mr. Eugster had that opportunity. The court held a hearing. Mr. Eugster had access to all the documentation and was afforded an opportunity to challenge the statement of services provided, the number of hours, and the rate. Mr. Eugster cites to no authority for his contention that the prevailing party must produce a contract or receipts from counsel to prove actual payment of the fees.
Mr. Eugster discusses constitutional takings cases at some length. The problem is he offers no authority for his basic premise that an attorney fees award is a taking. See WASH. CONST. art. I, § 16. We therefore do not address the issue. RAP 10.3(a)(5).
Anti-SLAPP Ruling. Mr. Eugster asserted RCW 4.24.510 as an affirmative defense to the motion for fees and asked for his own fees and statutory damages as prevailing party on the RCW 4.24.510 defense. Mr. Harris replied with his own request for anti-SLAPP fees for responding to Mr. Eugster's anti-SLAPP request. The statute provides:
A person who communicates a complaint or information to any branch or agency of federal, state, or local government ... is immune from civil liability for claims based upon the communication ... regarding any matter reasonably of concern to that agency.... A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.
RCW 4.24.510, anti-SLAPP statute.
The judge denied all anti-SLAPP motions. RP (Apr. 21, 2003) at 25. Mr. Eugster argues that the anti-SLAPP statute supersedes the frivolous action statute and precludes the trial court from awarding attorney fees in this case. We disagree.
The decision to award frivolous litigation attorney fees is within the discretion of the trial court and will not be disturbed *356 absent a clear showing of abuse. In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 265, 961 P.2d 343 (1998). Out of deference to the trial court's "personal and sometimes exhaustive contact with the case," we limit our inquiry to whether the judge's exercise of her discretion was manifestly unreasonable or based on untenable grounds or reasons. Skimming v. Boxer, 119 Wash.App. 748, 754, 82 P.3d 707 (2004).
The clear language of the frivolous litigation statute permits the court to award reasonable attorney fees in any civil action, upon written findings that the action is frivolous in its entirety and was advanced without reasonable cause. RCW 4.84.185; Biggs v. Vail, 119 Wash.2d 129, 133-34, 830 P.2d 350 (1992). By its own terms, RCW 4.84.185 applies unless otherwise specifically provided by statute. Mr. Eugster asserts that the anti-SLAPP statute, RCW 4.24.510, otherwise specifically provides. It does not.
An example of a statute that does specifically provide otherwise is the public official recall statute, former RCW 29.82.023 (1984). It says the superior court must conduct a threshold hearing without cost to any party to make sure the recall petition satisfies the minimum criteria of justiciability. Pearsall-Stipek, 136 Wash.2d at 265, 961 P.2d 343. In Pearsall-Stipek, the court reversed an attorney fees award to the defendant in a frivolous recall petition. The court held that the "without cost to any party" provision of former RCW 29.82.023 requires a finding of bad faith, not just frivolousness, to justify a fee award. The court explained that the threshold hearing requirement was a legislative compromise to protect office holders from frivolous petitions while avoiding the chilling effect of penalizing misguided citizens for exercising their right to petition. Id. at 266, 961 P.2d 343. Mr. Eugster's reliance on Pearsall-Stipek is, therefore, misplaced. The anti-SLAPP statute does not contain the specific language precluding compensatory fees for frivolous litigation that the recall statute contains. The superior courts thus retain their discretion to award fees.
Federal courts interpret the analogous statute the same way. The purpose of anti-SLAPP statutes is to protect the First Amendment right of citizens to petition the government for redress of grievances. Litigation that does not involve a bona fide grievance does not come within the First Amendment right to petition. See, e.g., Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).
Under Mr. Eugster's interpretation of RCW 4.24.510, every lawsuit ever filed is immune. It is a complaint filed with the court (a branch of government) relating to a matter of interest to the court (a lawsuit).
We note that several of Mr. Eugster's arguments arise from the same false premise: If the subject matter of a lawsuit touches upon politics or the public interest, the action, however baseless or vindictive, cannot be frivolous. So his primary argument against the frivolous litigation ruling is that his action was certainly not frivolous because it was about the election process, which is far from a frivolous subject. Likewise here, he asserts the anti-SLAPP statute supersedes the frivolous litigation statute and protects lawsuits against politicians even if baseless. Similarly, at pages 37-38 of his opening brief, Mr. Eugster contends the frivolous litigation statute is unconstitutional as applied to this action because the defendant holds public office. He argues that any lawsuit is, therefore, an exercise of protected rights of free speech and association, and the defendant has no recourse against even the most frivolous action.
The record here supports the trial court's determination that Mr. Eugster had no bona fide grievance against Mr. Harris. He knew he did not. And yet he refused Mr. Harris's request to dismiss him as a defendant. CP at 597.
Amount of Fees. Mr. Eugster next contends that the court abused its discretion in awarding $43,875 in fees because it is manifestly excessive. We review the amount of the award for abuse of discretion. Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wash. App. 665, 690, 82 P.3d 1199 (2004).
Mr. Eugster contends that no more than nominal fees can ever be justified in a frivolous *357 litigation award because, if litigation is frivolous, it is by definition quickly and easily disposed of. So, here, either Mr. Conklin padded his bill or, if he did work all those hours, the complaint was not frivolous. RP (May 15, 2003) at 12-13.
The court has some experience with frivolous arguments. Here, in addition to the voluminous record, Mr. Eugster expounded his arguments on appeal in an 85-page opening brief with 34 pages of appendices, and a 63-page reply brief. While we agree with the trial judge that the arguments are frivolous, it does not follow that such claims are simply and quickly disposed of.
The record here also includes adequate documentation for the fee award. We find no support for Mr. Eugster's proposed rule that a trial court can award attorney fees solely to reimburse the prevailing party for bills proven to have been actually paid. And Mr. Eugster cites no authority for this idea beyond his conclusory argument.
We do not address the regrettable accusations by Mr. Eugster that opposing counsel lied, attempted theft, and committed fraud against the tribunal. Appellant's Br. at 71-72. These accusations are unsupported in this record. We find no abuse of discretion.

FEES ON APPEAL
Mr. Harris requests his fees on appeal pursuant to RAP 18.9(a) under which this court can award fees for a frivolous appeal. Mr. Harris contends the appeal is completely frivolous, just as was the underlying lawsuit.
"An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal." Fay v. N.W. Airlines, Inc., 115 Wash.2d 194, 200-01, 796 P.2d 412 (1990). Mr. Harris contends these criteria are satisfied.
Fees on appeal are appropriate here. Mr. Eugster had no standing. He filed an untimely private quo warranto action. And he pursued the meritless claim through this appeal despite the prevailing party's attempts to alert him to the defects in his case early in the proceedings and to minimize attorney fees and costs. See, e.g., Manteufel v. Safeco Ins. Co. of Am., 117 Wash.App. 168, 178, 68 P.3d 1093 (CR 11), review denied, 150 Wash.2d 1021, 81 P.3d 119 (2003).
This appeal is without merit. There was no possibility of reversal.
We affirm the judgment of the trial court and award Mr. Harris his reasonable attorney fees and costs on appeal.
WE CONCUR: KURTZ and BROWN, JJ.
NOTES
[1] Kathy Reid lost to Mr. Harris in 1998. She is a nominal plaintiff in this action, having taken no active role. We therefore refer to the appellants as Mr. Eugster.
[2] Strategic Lawsuits Against Public Participation, which provides civil immunity for petitioning the government.
[3] Anderson v. Millikin, 186 Wash. 602, 59 P.2d 295 (1936); Heavey v. Chapman, 93 Wash.2d 700, 611 P.2d 1256 (1980).