IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>LINDSAY-ANN COETZEE,<br><br>　　　　　　　　Respondent,<br><br>　　　　v.<br><br>ANTONY CRISTIAN COETZEE,<br><br>　　　　　　　　Appellant. | No. 87598-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Lindsay and Antony Coetzee[1] sought to finalize their divorce through mediation. That effort was mostly successful and they executed a CR 2A agreement, effectively reserving only one issue for arbitration assuming they executed his selected arbitrator's contract. They each signed that contract. Antony then tried to opt out of arbitration, which the court did not permit. The arbitrator resolved the outstanding issue and the court entered a divorce decree, a parenting plan, and a child support order consistent with the CR 2A agreement and the arbitrator's award. Antony appeals both the order compelling arbitration and the entry of the latter two of those orders. We affirm.

---

[1] Because Lindsay Coetzee and Antony Coetzee share a surname, we respectfully refer to them by their first names for clarity.

I.    BACKGROUND

Lindsay filed for divorce from Antony on June 6, 2022.  On June 14, 2023, following a mediation, the parties signed a CR 2A agreement.  The agreement addressed all issues except decision-making authority over health and educational issues for their two children, which they reserved for arbitration by written submission if the parties signed an arbitration agreement within 10 days.  Each party signed the arbitration agreement and, on June 22, 2023, the parties jointly filed a notice of settlement striking the trial date.  The parties were each represented up to this point.  Antony's attorney withdrew after the notice of settlement was filed.

Antony then filed pro se several motions to delay arbitration, change the agreed arbitrator, and eventually withdraw from arbitration and reinstate the trial date.  The court denied Antony's motions and granted Lindsay's cross-motion to enforce the CR 2A and to compel arbitration before the agreed arbitrator.  Antony still refused to participate in arbitration, and so the arbitrator made their decision based only on evidence that Lindsay submitted.  The arbitration award gave sole decision-making authority to Lindsay because it found that Antony had committed domestic violence against Lindsay.

Antony hired counsel and filed a motion to vacate the arbitration award.  The court denied the motion to vacate and instead confirmed the arbitration award.  On December 2, 2024, the court entered inter alia a final divorce order, parenting plan, and child support order based on the CR 2A agreement and arbitration award.  Antony timely appeals.

## II. ANALYSIS

Antony claims that the court erred when it enforced the CR 2A agreement and ordered him to proceed to arbitration. He also claims that the court abused its discretion when, consistent with the arbitrator's award, it restricted his decision-making authority and separately when it imputed income to him in the child support calculation. We address each assignment of error in turn.

### A. Enforcing the CR 2A Agreement[2]

Antony argues that that the provision of the CR 2A agreement giving the parties one week to sign the arbitration contract is ambiguous, and that the court therefore erred when it compelled him to participate in arbitration. In context, the language is not ambiguous and so we find no error.

We interpret CR 2A agreements by applying normal contract principles. In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013). Where parties dispute a contract's language, a court determines parties' intent by analyzing the agreement's "objective manifestations" rather than the "unexpressed subjective intent" of the parties. In re of Estate of Petelle, 195 Wn.2d 661, 665, 462 P.3d 848 (2020) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). Generally, words in a contract are given

---

[2] This first assignment of error arises from the court's order to enforce the CR 2A and its order denying Antony's motion to reinstate the trial date, both entered on December 15, 2023. Antony did not designate either order in the notice of appeal, choosing to designate inter alia the divorce and child support orders and parenting plan. Antony addresses this deficiency for the first time in his reply brief. This court "will review" the former orders as they prejudicially affect the latter. RAP 2.4(b); Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 380, 46 P.3d 789 (2002) (holding the same where the designated order "would not have happened but for" the undesignated order).

their "ordinary, usual, and popular meaning." Condon v. Condon, 177 Wn.2d 150, 163, 298 P.3d 86 (2013). We review a trial court's interpretation of a contract de novo. Pascale, 173 Wn. App. at 841.

The party moving to enforce a settlement agreement has the burden of proving no genuine dispute exists over the existence and material terms of the agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). If the language is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists. Lehrer v. Dep't of Soc. & Health Servs., 101 Wn. App. 509, 515, 5 P.3d 722 (2000). Contract language is ambiguous if it is susceptible to two different but reasonable interpretations. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 712, 375 P.3d 596 (2016).

The CR 2A agreement reads, in relevant part:

this Parenting Plan is agreed to by the parties except that the issues of .191 restrictions and decision making are reserved for arbitration with Teresa McNally, at the request of Father in lieu of trial. *In the event that either party chooses to not use Ms. McNally, these limited parenting issues will be presented to the court for trial on the Parenting Plan.* The parents will be presented with Ms. McNally's arbitration agreement and, if not signed within 10 days of presentment, the matter will then be deemed to be tried with the court. The parents will not strike the trial date until both parents have signed Ms. McNally's arbitration agreement[.]

(Emphasis added.)

Antony claims that this provision could reasonably be interpreted to allow him to opt out of arbitration at any time, even after signing the arbitration agreement, and proceed to trial. We disagree. This interpretation is patently inconsistent with the structure and ordinary meaning of various provisions of the

4

agreement.  Condon, 177 Wn.2d at 162-63.

First, there is no ambiguity that issues related to RCW 26.09.191 restrictions and decision-making "are reserved for arbitration . . . in lieu of trial."  Indeed, the parties had chosen a specific arbitrator "at the request of" Antony.

Second, the only conditions precedent to entering arbitration were the presentment to the parties of the arbitrator's agreement, the bilateral signing of the agreement, and the striking of the trial date.

The agreement contemplates only one remaining contingency: either party "choos[ing] to not use" the selected arbitrator by not signing the agreement within 10 days of presentment.  In such a situation, the matter would then proceed to trial.

There is no dispute that the arbitrator presented her agreement to the parties, and the parties satisfied both conditions precedent of executing the agreement and striking trial.

Effectively, Antony asks us to read one clause of one sentence in isolation, namely, that "[i]n the event that either party chooses to not use Ms. McNally, these limited parenting issues will be presented to the court for trial on the Parenting Plan."  And he avers that, because there is no limiting temporal element, he could "opt out at any time" at his whim.  .

We reject this interpretation because, as a first step, a contract "'should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions.'"  TST, LLC v. Mfd. Hous. Disp. Resol. Program of Off. of Att'y Gen., 17 Wn. App. 2d 662, 672, 485 P.3d 977 (2021) (quoting Colo. Structures, Inc. v. Ins. Co. of W., 161 Wn.2d 577, 588, 167 P.3d 1125 (2007)).  Per the only

comprehensive interpretation of the CR 2A agreement, he had agreed to arbitrate the designated issues with the selected arbitrator and had ten days to refuse to sign the arbitration contract or waive his right to trial. We may not create ambiguity where none exists. Lehrer, 101 Wn. App. at 515. Antony's interpretation does not account for the ten day "opt out" window and is, therefore, not reasonable. Kut Suen Lui, 185 Wn.2d at 712.

In response, Antony argues that the various motions he filed to delay or suspend arbitration are extrinsic evidence that the court wrongly "fail[ed] to consider" and supports his position. These motions may be evidence that Antony changed his mind and no longer wished to be bound by the CR 2A agreement, but a party's change of mind, remorse, or second thoughts does not make a settlement agreement disputed. Lavigne v. Green, 106 Wn. App. 12, 19, 23 P.3d 515 (2001). We look to the ordinary meaning of the words and not one party's post-hoc subjective intent, before turning to such extrinsic evidence. Matter of Est. of Petelle, 195 Wn.2d at 665.

Thus, the court did not err when it entered the orders denying Antony's motion to reinstate the trial date and granting Lindsay's motion to enforce the CR 2A, allowing arbitration to proceed over Antony's objection.

B.    Child Support Order

Antony claims that the court abused its discretion when it ruled that he was voluntarily unemployed and imputed income to him when calculating child support. We disagree.

Normally, a trial court's award of child support, including imputation of

6

income for a voluntarily unemployed or underemployed parent, is reviewed for an abuse of discretion. In re Marriage of Shui & Rose, 132 Wn. App. 568, 588, 125 P.3d 180 (2005). But, here, the CR 2A agreement appended a proposed child support order and worksheets as an exhibit. The proposed order states that Antony is voluntarily unemployed and imputes to him a net monthly income of $6,955.67. Using this number, Lindsay's presumptive child support obligation is calculated at $1073.40. The CR 2A agreement, in turn, states that Lindsay's child support obligation shall be $1073.40. Holding the parties to this agreement, the court relied on the amount in the CR 2A agreement when it ordered child support.

Antony claims that the court erred in relying on the CR 2A agreement, arguing that "agreements cannot authorize a court to disregard statutory requirements or impute income contrary to law." Antony cites no authority supporting his argument that the court should have apparently ignored the facts stated in the CR 2A agreement. On the contrary, the court *must* impute the income of a parent "when the parent is voluntarily unemployed or voluntarily underemployed." RCW 26.19.071(6).

Antony also claims the court incorrectly ignored the following facts: that he was laid off because of the COVID-19 pandemic; that he actively sought employment after being laid off; that during his time of unemployment, he was often the children's primary caregiver; that they had agreed to a 50/50 custody arrangement; that Lindsay earns a substantial and consistent salary; and that Lindsay had been paying him spousal support. These are all factors under RCW 26.19.071(6) and it is reasonable to assume that Antony and his counsel

7

considered all these facts when he signed the CR 2A agreement.

In short, it was not an abuse of discretion to find, based on Antony's signature on the CR 2A agreement, that he is voluntarily unemployed. Therefore, the court did not abuse its discretion when it ordered child support in the way it did.

C.      Parenting Plan

Antony claims that the trial court abused its discretion when it entered a final parenting plan limiting Antony's decision-making authority. Before that, the arbitrator had ruled in Lindsay's favor on the RCW 29.09.191 restrictions and decision-making authority based on the evidence in the written submissions, and the court had confirmed the arbitration award. The court then entered the final parenting plan consistent with those previous decisions.[3] We hold that the court applied the proper process and type of review, as to this issue.

1. Scope of the Review of an Arbitration Award

Antony first argues that the court erred because it did not conduct an "independent judicial inquiry" when reviewing the arbitration award. Antony incorrectly overstates the narrow authority a trial court has to review an arbitration award. The trial court is forbidden from conducting a trial de novo. Salewski v. Pilchuck Veterinary Hosp., Inc., P.S., 189 Wn. App. 898, 904, 359 P.3d 884 (2015).

Judicial review of an arbitration award is in fact quite limited. Int'l Union of

---

[3] Antony's argument mainly attacks the court's order confirming the arbitration award, made on October 28, 2024. He makes no argument that the trial court deviated from the arbitration award in the final parenting plan signed on December 2, 2024. Antony does not designate the order confirming the arbitration award in the notice of appeal. Antony's brief does not address this deficiency. Nonetheless, we will review the order as, again, it prejudicially affects the decision designated in the notice. RAP 2.4(b).

Operating Engineers, Local 286 v. Port of Seattle, 176 Wn.2d 712, 720, 295 P.3d 736 (2013). Both trial and appellate courts may not reexamine the evidence or look to the merits of the case. Salewski, 189 Wn. App. at 903-04. If an argument cannot be decided "without delving into the substantive merits of the claim," than the court shall not vacate an arbitration award. Mainline Rock & Ballast, Inc. v. Barnes, Inc., 8 Wn. App. 2d 594, 610, 439 P.3d 662 (2019). "We do not reach the merits of the arbitrator's legal conclusions. We do not even review the arbitration decision under an arbitrary and capricious standard." Id. (citation omitted).

Instead, we may only review whether the trial court correctly applied the arbitration statute, chapter 7.04A RCW, when deciding whether to confirm an award or deny a motion to vacate. Cummings v. Budget Tank Removal & Envtl. Servs., LLC, 163 Wn. App. 379, 388, 260 P.3d 220 (2011). That is, a court may vacate an award only on the narrow grounds listed in RCW 7.04A.230(1). AURC III, LLC v. Point Ruston Phase II, LLC, 3 Wn.3d 80, 86, 546 P.3d 385 (2024).[4]

Under RCW 7.04A.230(1), a "court shall vacate an award if: (a) The award was procured by corruption, fraud, or other undue means; (b) There was: (i) Evident partiality by an arbitrator appointed as a neutral; (ii) Corruption by an arbitrator; or (iii) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding." The trial court's role is to ensure "procedural fairness." Seattle Packaging Corp. v. Barnard, 94 Wn. App. 481, 487, 972 P.2d 577 (1999).

On this point, Antony argues that the arbitrator showed partiality because

---

[4] Antony suggests in passing that RCW 7.04A does not apply to parenting plans. That claim is contrary to the language of RCW 26.14.030(1) ("Except as otherwise provided in this chapter, the law applicable to arbitration is chapter 7.04A RCW.").

she refused to postpone arbitration until his pending criminal charges for domestic violence were resolved. On the contrary, the court considered that Antony had signed the CR 2A agreement and arbitration agreement when represented by counsel, while criminal proceedings were ongoing. It also noted that the arbitrator granted multiple extensions to the arbitration process, showing impartiality, and that Antony ultimately "voluntarily absented himself from the process." The court concluded that there was no evidence of corruption, fraud, partiality, or misconduct and therefore denied the motion to vacate the award.[5] On this record, we cannot disagree.

Antony next claims the court must, after independently reviewing the evidence, "provide express findings and conclusions" regarding domestic violence and limitations on decision-making authority. He asserts that the court erred because the order lacks such findings. We read no such requirement in any relevant statute.

"[T]he court shall order sole decision making and no dispute resolution other than court action if it is found that a parent has engaged in any of the following conduct . . . A history of acts of domestic violence as defined in RCW 7.105.010."

---

[5] Relatedly, Antony also asserted before the trial court several non-procedural fairness arguments, which assumed the existence of the criminal charges was material to the arbitrator's decision. He claimed that the ultimate dismissal of the charges was new evidence that the court should consider. In conclusory fashion, he then claimed that, because the arbitrator relied on the existence of pending criminal charges that were later dismissed, the award was based on fraud on Lindsay's part. What is more the award expressly indicated that the arbitrator independently reviewed the evidence of domestic violence and did not base their decision on the existence of pending criminal charges. Regardless, this argument is not responsive to the limited scope of our review.

RCW 26.09.191(5)(c). Antony may be correct that a decision to impose limitations under this statute must include express findings. In re Marriage of Katare, 125 Wn. App. 813, 826, 105 P.3d 44 (2004). But, when applied to an arbitration award, this requirement is met under RCW 26.14.140, when an arbitrator, as here, states the reasons on which its decision is based. In other words, a trial court must confirm that that the award includes the requisite express findings, but nothing in the statute suggests that the court is required to make the same findings via independent review.

The arbitration award stated, "It is uncontested that Antony has followed and stalked Lindsay, violated restraining orders, and presented himself at Lindsay's residence." It found that Antony had followed Lindsay, taken pictures of her cars, and drove around her home. It noted that a domestic violence protection order (DVPO) had been entered against Antony and that he interrogated the children about Lindsay's interactions in violation of the protection order. The arbitrator concluded based on the evidence that he engaged in stalking and coercive behavior, which fall under the RCW 7.105.010(10)(b) definition of domestic violence.

The arbitrator further correctly applied RCW 26.09.191(5)(c), which precludes mutual decision-making when there is a history of domestic violence. The arbitrator therefore, following the proper process, decided that Lindsay shall have sole decision-making authority.

Finally, instead of requiring an independent judicial inquiry, the statute requires the reviewing trial court to confirm the arbitration award if "*on its face* [the

11

award]: (a) Complies with RCW 26.14.140 and law of this state other than this chapter governing a child-related dispute; and (b) Is in the best interests of the child." RCW 26.14.150(3) (emphasis added). The use of the term "on its face" as to both prongs indicates that the trial court should not "delv[e] into the substantive merits" of either prong. Mainline Rock & Ballast, 8 Wn. App. 2d at 610. This is precisely what Antony invites this court to do, which we decline.

In short, when the court denied Antony's motion to vacate and confirmed the award, it found that the award "states reasons and legal basis required by Washington state law, [and] . . . comp[lies] with RCW 26.140." Again, on this record, we cannot disagree. We next turn to the second element, the best interests of the children.[6]

2. Best-Interest Determination

We review the court's best interest finding for abuse of discretion, which "occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence. Id.

---

[6] Antony also claims that the court should have vacated the arbitration award under RCW 26.09.187(1). RCW 26.09.187(1) prohibits the court from ordering arbitration when it finds a limiting factor from RCW 26.09.191 applies, such as domestic violence. The existence of a DVPO is not necessarily a limiting factor. RCW 29.09.191(2)(b) ("The weight given to the existence of a protection order issued under chapter 7.105 RCW or former chapter 26.50 RCW as to domestic violence is within the discretion of the court.") Apart from the DVPO, no finding of domestic violence had been made at the time the CR 2A agreement was signed or when it was enforced. There is no authority supporting the claim that the finding of domestic violence by an arbitrator may retroactively be used to vacate the agreement itself.

The court believed that Antony was "making decisions from the wrong perspective . . . [n]ot keeping his children front and center with respect to what's going on here." There is sufficient evidence for this conclusion in the record. Antony attempted to disrupt Lindsay's parenting time when he appeared with a new puppy outside Lindsay's home, and later again outside the children's swimming lessons. He also unilaterally cancelled the children's therapy appointments or fired their therapists, making it difficulty for them to meet with the same therapist consistently. This evidence supported the decision that shared decision-making was not in the children's best interest.

Antony claims the court ignored evidence that Lindsay violated temporary orders, that she had a history of violent behavior, and that she intended to relocate the children to South Africa. The record reflects that the court did not ignore evidence; it weighed Antony's evidence against Lindsay's evidence and found Lindsay more credible. We do not review the trial court's credibility determinations or weigh evidence even if we may disagree with the trial court. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

In response, Antony claims that the court ignored the family service report, which "could not corroborate any of the physical violence that occurred in the parties' relationship" and found that "the father's behavior does not rise to the level of abuse required for an RCW 26.09.191 restriction for domestic violence." But Antony himself submitted a "Brief Summary of Work Product Review of FCS Parenting Plan Evaluation Report" by clinical psychologist Daniel Rybicki, "several points of concern that detract from the reliability" of the report and that "minimal

weight should be placed on this FCS parenting plan report pending additional review." It was not an abuse of discretion for the court to find that Lindsay having sole decision-making authority was in the children's best interest despite the findings (or lack of findings) in the FCS report.

Antony next argues that the court erred by ignoring the temporary parenting plans, which had consistently granted shared decision-making, and by not explaining why shared decision-making was no longer in the children's best interest. This argument fails because the court "shall not draw any presumptions from the provisions of the temporary parenting plan" and is not required to explain any deviation from temporary orders. RCW 26.09.191(2)(a).

Finally, Antony alleges that the court erred because, even though the DVPO was granted, it should not have placed weight on the unproven allegations in Lindsay's petition. "The weight given to the existence of a protection order issued under chapter 7.105 . . . as to domestic violence is within the discretion of the court." RCW 26.09.191(2)(b). The court did not explicitly mention the DVPO when assessing the best interest of the children, but if the court did place weight on the DVPO when confirming the parenting plan, that was within its discretion.

It was not an abuse of discretion for the court to find that it was in the best interest of the children for Lindsay to have sole decision-making authority. The trial court's confirmation of the arbitration award was not in error. We therefore find no error in the parenting plan and affirm the trial court's decision.

D.  Attorney Fees

Lindsay requests attorney fees, claiming Antony's appeal is frivolous. RAP

14

18.9 allows this court to award a party attorney fees as sanctions when the opposing party files a frivolous appellate action. Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant" and "[a]n appeal that is affirmed simply because the arguments are rejected is not frivolous." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013) (citation omitted). An appeal is only frivolous if there is no debatable issue on which reasonable minds might differ and the appeal is so devoid of merit that there is no possibility of reversal. Id.

Although we reject Antony's arguments, we do not view his appeal as so debatable of issues as to be frivolous. The argument that the trial court should conduct an independent review of the parenting plan in an arbitration award is not so devoid of merit that the appeal stood no possibility of success. Resolving all doubts in his favor, Antony's argument provides reasonable grounds for appeal. The request for fees is denied.

## III.    CONCLUSION

We affirm the trial court's order.

Díaz, J.

WE CONCUR:

Coburn, J.