343 F.3d 1198
 DEMOCRATIC PARTY OF WASHINGTON STATE; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David Mcdonald, Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees, and
Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Christopher Vance; Dione Ludlow; John Mills;
Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis, Intervenor,
v.
Sam REED, Secretary of State of the State of Washington, Defendant-Appellee.
Democratic Party of Washington State; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David Mcdonald, Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs,
Jeff Kent, Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Dione Ludlow; John Mills; Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis, Intervenor, and
Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Christopher Vance; Dione Ludlow; John Mills; Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis; Democratic Party of Washington State Christopher Vance; Lindsey Echelbarger; Diane Tebelius, Intervenors-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees,
v.
Sam Reed, Secretary of State of the State of Washington, Defendant-Appellee.
Democratic Party of Washington State; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David Mcdonald, Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs,
Opinion Christopher Vance; Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Dione Ludlow; Freedom Socialist Party; Green Party of Washington; Diane Tebelius, Intervenors, and
Democratic Party of Washington State Reed Libertarian Party of Washington State; John Mills; Chris Caputo; Donald Crawford; Erne Lewis, Intervenors-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees,
v.
Sam Reed, Secretary of State of the State of Washington, Defendant-Appellee.
 No. 02-35422.
 No. 02-35424.
 No. 02-35428.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 6, 2003 — Seattle, Washington.
 Filed September 15, 2003.
 
 David T. McDonald (argued and briefed), James A. Goeke (briefed), Jonathan H. Harrison (briefed), Preston, Gates & Ellis, LLP, Seattle, Washington, for appellants Democratic Party of Washington State, et al.
 John J. White Jr., (argued and briefed) and Kevin B. Hansen (briefed), Livengood, Carter, Tjossem, Fitzgerald & Alskog, PLLC, Kirkland, Washington, for appellants Republican State Committee of Washington, et al.
 Richard Shepard, Shepard Law Office, Tacoma, Washington, for appellants Libertarian Party of Washington State, et al.
 James K. Pharris (argued and briefed), Senior Assistant Attorney General, Olympia, Washington, and Jeffrey T. Even (briefed), Assistant Attorney General, Olympia, Washington, for appellee Sam Reed.
 James M. Johnson, Olympia, Washington, for appellees Washington State Grange, et al.
 Appeal from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-00-05419-FDB.
 Before: Andrew J. KLEINFELD, and M. Margaret McKEOWN, Circuit Judges, and Charles R. BREYER,* District Judge.
 OPINION
 KLEINFELD, Circuit Judge:
 
 
 1
 The State of Washington conducts a "blanket" primary, in which voters choose candidates without being restricted to candidates of any particular party. The Democratic, Republican and Libertarian Parties all challenged the law, claiming that it unconstitutionally restrains their supporters' freedom of association. They are correct.
 
 
 2
 We recognize that Washington voters are long accustomed to a blanket primary and acknowledge that this form of primary has gained a certain popularity among many of the voters. Nonetheless, these reasons cannot withstand the constitutional challenge presented here. The legal landscape has changed, and our decision is compelled by the Supreme Court's landmark decision in California Democratic Party v. Jones.[1]
 
 I. BACKGROUND
 
 3
 Washington's "blanket primary" system was first established in 1935. Except for presidential primaries, "all properly registered voters may vote for their choice at any primary ..., for any candidate for each office, regardless of political affiliation and without a declaration of political faith or adherence on the part of the voter."[2] All the candidates from all parties are listed on the ballot, along with a party designation or "independent" designation.[3] To get onto the general election ballot, a candidate has to get a plurality of the votes cast for candidates of his or her party, and at least one percent of the total votes cast at the primary for all candidates for that office.[4]
 
 
 4
 Thus the voter gets a ballot listing all candidates of all parties and votes freely among them, as opposed to getting an exclusively Democratic or Republican or other limited ballot. And the voter can choose candidates from some parties for some positions, others for other positions, a process known as "ticket-splitting."[5]
 
 
 5
 Presidential primaries are different. If a major party so requests, voters requesting a party-specific ballot get a separate ballot listing candidates only of that party.[6] Nonaffiliated voters get ballots listing candidates of all parties.[7] These different kinds of ballots have to be "readily distinguishable," the results reported separately, and a major party can allocate delegates using the partisan ballots under its own rules.[8]
 
 
 6
 In the case before us, the Democratic Party of Washington sued the Secretary of State for a declaratory judgment that the blanket primary was unconstitutional and an injunction enabling the Party to "limit participation" in partisan primaries. The Republican Party successfully moved to intervene as a plaintiff, seeking similar declaratory relief and an injunction likewise requiring the Secretary of State to implement a mechanism to "effectuate the Party's exercise of its right to limit participation in that primary." Numerous individuals joined both complaints as plaintiffs. The Libertarian Party also intervened, likewise seeking a declaratory judgment of unconstitutionality, and an injunction with terms focusing upon its interests as a small party. The Washington State Grange intervened as a defendant, supporting the blanket primary system as is.
 
 
 7
 Pursuant to stipulation, the 2000 primary was held under the existing statutory system. Though a preliminary injunction would have limited subsequent primaries in accord with the parties' complaint, the district court dissolved the injunction on July 24, 2001. The case then went forward on cross motions for summary judgment. The district court granted the State of Washington's motions to strike the declarations of witnesses put forward by the Democrats and Republicans, and denied the political parties' motions for summary judgment on the ground that they had not demonstrated evidence of a substantial burden to their First Amendment right of association. The district court granted the defendants' motion for summary judgment on the ground that the political parties had failed to meet their burden of proof. The political parties now appeal both the evidentiary rulings and the grant of summary judgment.
 
 II. ANALYSIS
 
 8
 We review de novo the district court's grant of summary judgment.[9]
 
 
 A. Res Judicata
 
 
 9
 The Grange argues that we should affirm the judgment on the ground that the constitutional issues are res judicata. The Washington State Supreme Court upheld the blanket primary against challenges by individuals in 1936[10] and 1980.[11] The district court rejected this argument, and so do we. Obviously, res judicata does not apply because none of the plaintiffs were parties or in privity with parties to those cases, and constitutional law has changed materially since then,[12] most notably for purposes of this case when Democratic Party v. Jones came down in 2000.
 
 
 B. Strict Scrutiny
 
 
 10
 The complexity of the relationship among private, state, and federal regulations of state elections has grown through a long series of decisions beginning with those rejecting the white-only Democratic primaries in the South,[13] continuing through to the present day in Bush v. Gore.[14] Fortunately, it is no longer necessary to parse this entire body of law, because the Supreme Court recently spoke to the precise problem at issue in this case. California Democratic Party v. Jones[15] held unconstitutional a California blanket primary scheme. The case at bar turns on whether the Washington scheme is distinguishable from the California scheme held in Jones to violate the right of free association.
 
 
 11
 The Secretary of State argues that the district court properly excluded the Democratic and Republican Parties' evidence, and without it, the Parties fail to meet what the Secretary claims is their burden of proof to show that they are harmed.
 
 
 12
 It is not at all clear that the plaintiffs had any "burden of proof" that they needed to bear. There is no standing or case or controversy issue. This is a facial challenge to a statute burdening the exercise of a First Amendment right. The challenge is brought by those wishing to exercise their rights without the restraints imposed by the statute. In Jones, the Court read the state blanket primary statutes, determined that on their face they restrict free association, accordingly subjected them to strict scrutiny, and only then looked at the evidence to determine whether the state satisfied its burden of showing narrow tailoring toward a compelling state interest. The Supreme Court does not set out an analytic scheme whereby the political parties submitted evidence establishing that they were burdened. Instead, Jones infers the burden from the face of the blanket primary statutes. We accordingly follow the same analytic approach as Jones.
 
 
 13
 The Washington scheme is materially indistinguishable from the California scheme held to violate the constitutional right of free association in Jones. They are both "blanket" primaries. Jones carefully distinguishes blanket primaries, in which a voter can vote for candidates of any party on the same ballot, from an "open" primary where the voter can choose the ballot of either party but then is limited to the candidates on that party's ballot.[16] Obviously the blanket primary is also different from a "closed" primary in which only voters who register as members of a party may vote in primaries to select that party's candidates.[17] Jones also distinguishes the "nonpartisan blanket primary" in which voters can vote for anyone on the primary ballot, and then the top vote-getters regardless of party run against each other in the general election.[18]
 
 
 14
 The Washington statutory framework is a straight blanket primary, not an open, closed or nonpartisan blanket primary. Washington argues that its scheme should be distinguished from California's on two grounds. First, California registers voters by party but Washington does not. Second, as the State's brief puts it, because of its non-partisan registration, the winners of the primary "are the `nominees' not of the parties but of the electorate."[19] Thus, the State argues, its primary is a "nonpartisan blanket primary"[20] that under Jones does not violate the parties' associational rights.
 
 
 15
 These are distinctions without a difference. That the voters do not reveal their party preferences at a government registration desk does not mean that they do not have them. The Washington scheme denies party adherents the opportunity to nominate their party's candidate free of the risk of being swamped by voters whose preference is for the other party.
 
 
 16
 Also, those who actively participate in partisan activities, including activities such as holding precinct caucuses in their homes, serving on local and state party committees, contributing money to their parties, canvassing, and watching polls for their parties, have a First Amendment right to further their party's program for what they see as good governance. Their right to freely associate for this purpose is thwarted because the Washington statutory scheme prevents those voters who share their affiliation from selecting their party's nominees. The right of people adhering to a political party to freely associate is not limited to getting together for cocktails and canapes. Party adherents are entitled to associate to choose their party's nominees for public office. As for the State of Washington's argument that the party nominees chosen at blanket primaries "are the `nominees' not of the parties but of the electorate,"[21] that is the problem with the system, not a defense of it. Put simply, the blanket primary prevents a party from picking its nominees.
 
 
 17
 The First Amendment protects the right of freedom of association with respect to political parties,[22] and this right includes "the right not to associate."[23] "In no area is the political association's right to exclude more important than in the process of selecting its nominee."[24] The nominee is "the party's ambassador to the general electorate in winning it over to the party's views,"[25] and the blanket primary "forces petitioners to adulterate their candidate-selection process — the `basic function of a political party' — by opening it up to persons wholly unaffiliated with the party."[26] Even "a single election in which the party nominee is selected by nonparty members could be enough to destroy the party,"[27] as would have been the case had opponents been able to swamp the Republican Party in 1860 and force it to nominate a proslavery candidate rather than Abraham Lincoln.[28] "Unsurprisingly, [the Supreme Court's] cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences."[29]
 
 
 18
 Thus under Jones the Washington blanket primary system is materially indistinguishable from the California blanket primary system and is unconstitutional unless the defendants bear their burden of demonstrating that "it is narrowly tailored to serve a compelling state interest."[30]
 
 
 C. State Interests
 
 
 19
 In Jones, the State of California put forth seven different state interests that it claimed could justify the use of a blanket primary. The Court rejected all of them as less than compelling.[31] The defendants in this case assert some of the same interests that the Court categorically rejected. This "determination is not to be made in the abstract, by asking whether fairness, privacy, etc., are highly significant values; but rather by asking whether the aspect of fairness, privacy, etc., addressed by the law at issue is highly significant."[32]
 
 
 20
 Defendants argue that (1) the blanket primary "promotes fundamental fairness because it permits all voters, regardless of party affiliation, to participate in all stages";[33] (2) "all the voters should help choose the nominees for all offices" to provide maximum choice;[34] and (3) the blanket primary affords voters "full participation in the election process without forcing them to publicly reveal their political party affiliation."[35] The first two amount to the same interest California urged in Jones, categorically rejected because "a nonmember's desire to participate in the party's affairs is overborne by the counter-vailing and legitimate right of the party to determine its own membership qualifications."[36] Providing increased "voter choice" "is hardly a compelling state interest, if indeed it is even a legitimate one."[37] The supposed unfairness of depriving those voters who do not choose to affiliate with a party from picking its nominee "seems to us less unfair than permitting nonparty members to hijack the party."[38]
 
 
 21
 The third proposed interest — privacy — has to be rejected as well. In Jones, the Supreme Court held that "we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a `compelling' one."[39] Washington law expressly requires the State to provide the parties, upon request, with the partisan affiliations expressed by voters in the presidential primary.[40] It is only in general elections that the Washington Constitution broadly protects voters' secrecy as to their partisan preferences. Primaries are distinguishable, under the Washington Constitution, because "[i]t is not the purpose of the primary election law to elect officers."[41]
 
 
 22
 Washington also argues that its blanket primaries promote "increased voter participation by giving all voters the sense that their votes `count' in every stage of the election process."[42] Jones rejects the voter participation argument on the ground that it is "just a variation on the same theme (more choices favored by the majority will produce more voters) and suffers from the same defect" as the State's arguments that "fairness" requires that unaffiliated voters participate in the primary elections.[43] The State's argument that it has a compelling interest in preserving its sovereign "right to determine how public officers will be chosen" is insufficiently specific to function as a compelling state interest. While of course a State may impose time, place, and manner restrictions on a primary election,[44] those restrictions may not infringe on Constitutional rights, as the blanket primary system imposed by the State of Washington does.
 
 
 23
 There is one more argument that the State makes, which is in substance the same one the Grange makes. As the State puts it, the blanket primary "recognizes the associational interests of groups other than political parties" by enabling voters to "form ad hoc political associations which cross party lines to support a particular candidate or a particular cause."[45] The Grange argues that Grange members support water and public utilities for farms and that its members' rights to advance their rural agenda in both parties will suffer if each Granger is forced to choose a party ballot.[46] The Grange says that it spearheaded the initiative in 1933 that led Washington to adopt the blanket primary, which has successfully prevented "a politically corrupt nominating process controlled by political bosses or special interests."[47]
 
 
 24
 "Special interests" are evidently in the eye of the beholder. Some urban voters might think that special protection for rural water and electricity concerns serve a "special interest" of farmers, and that the Grange is a special interest group. There is nothing corrupt about promoting such protection, nor is there anything corrupt about organizing a party agenda that does not provide special protection for these interests. The members of the Grange have a First Amendment right to control its membership and message so that it is not swamped by new members with some urban or foreign policy agenda. Likewise, the people in the Democratic, Republican, and Libertarian Parties have First Amendment rights to control their nominating processes so that they are not controlled by Grangers.
 
 
 25
 This special interest argument is materially indistinguishable from the first one the Court rejected in Jones. California had urged that the blanket primary produced nominees "who better represent the electorate" and go beyond "partisan concerns," because blanket primaries "compel candidates to appeal to a larger segment of the electorate."[48] The Court analogized this to requiring the South Boston Allied War Veterans Council to allow "an organization of openly gay, lesbian and bisexual persons" to march in their St. Patrick's Day Parade,[49] and, like that, the object of the California blanket primary was to require speakers to substitute someone else's message for their own, which "the general rule of speaker's autonomy forbids."[50] The remedy available to the Grangers and the people of the State of Washington for a party that nominates candidates carrying a message adverse to their interests is to vote for someone else, not to control whom the party's adherents select to carry their message.
 
 
 26
 Appellants also challenge the district court's evidentiary rulings, which struck much of the evidence they submitted. We need not reach the evidentiary questions, because even without the evidence, appellants are entitled to prevail. This case presents a facial constitutional challenge, and the Washington blanket primary statute is on its face an unconstitutional burden on the rights of free association of the Democrats, Republicans and Libertarians who have brought this suit.
 
 
 27
 We REVERSE and REMAND for entry of summary judgment, declaratory judgment, and an injunction in favor of the appellants.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles R. Breyer, District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)
 
 
 [2]
 Wash. Rev.Code § 29.18.200
 
 
 [3]
 Wash. Rev.Code § 29.30.020(3)
 
 
 [4]
 Wash. Rev.Code § 29.30.095
 
 
 [5]
 Wash. Rev.Code § 29.18.200
 
 
 [6]
 Wash. Rev.Code § 29.19.045
 
 
 [7]
 Id.
 
 
 [8]
 Wash. Rev.Code § 29.19.055
 
 
 [9]
 Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002).
 
 
 [10]
 Anderson v. Millikin, 186 Wash. 602, 59 P.2d 295, 296-97 (1936).
 
 
 [11]
 Heavey v. Chapman, 93 Wash.2d 700, 611 P.2d 1256, 1259 (1980).
 
 
 [12]
 Montana v. United States, 440 U.S. 147, 161-62, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (past judgments need not be given preclusive effect if there has been a significant intervening change of law). See also Kennedy v. City of Seattle, 94 Wash.2d 376, 617 P.2d 713, 715-16 (1980) (issues may be of sufficient public importance to bar the use of collateral estoppel).
 
 
 [13]
 See, e.g., Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927); Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). Subsequently, constitutional law as applied to primary elections has developed significantly with respect to the state's relationship to political parties outside of the racial context as well. See, e.g., Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); Eu v. San Francisco Democratic Comm., 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989); Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).
 
 
 [14]
 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)
 
 
 [15]
 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)
 
 
 [16]
 See id. at 576, n. 6, 120 S.Ct. 2402.
 
 
 [17]
 See id. at 570, 120 S.Ct. 2402.
 
 
 [18]
 Id. at 585-86, 120 S.Ct. 2402.
 
 
 [19]
 Brief of Appellee Sam S. Reed at 46
 
 
 [20]
 Jones, 530 U.S. at 585, 120 S.Ct. 2402 (emphasis in original).
 
 
 [21]
 Brief of Appellee Sam S. Reed at 46
 
 
 [22]
 Jones, 530 U.S. at 574, 120 S.Ct. 2402 (quoting Tashjian, 479 U.S. at 214-15, 107 S.Ct. 544).
 
 
 [23]
 Id. at 574, 120 S.Ct. 2402.
 
 
 [24]
 Id. at 575, 120 S.Ct. 2402.
 
 
 [25]
 Id.
 
 
 [26]
 Id. at 581, 120 S.Ct. 2402 (internal citation omitted).
 
 
 [27]
 Id. at 579, 120 S.Ct. 2402.
 
 
 [28]
 Id. (citing 1 Political Parties & Elections in the United States: An Encyclopedia 398-408, 587 (L. Maisel ed.1991)).
 
 
 [29]
 Id. at 575, 120 S.Ct. 2402 (internal citations and quotation marks omitted).
 
 
 [30]
 Id. at 582, 120 S.Ct. 2402.
 
 
 [31]
 Jones, 530 U.S. at 584, 120 S.Ct. 2402 ("Respondents' remaining four asserted state interests — promoting fairness, affording voters greater choice, increasing voter participation, and protecting privacy — are not, like the others, automatically out of the running; but neither are they, in the circumstances of this case, compelling.") (emphasis in original).
 
 
 [32]
 Id. (emphasis in original).
 
 
 [33]
 Brief of Appellee Sam S. Reed at 50
 
 
 [34]
 Id.
 
 
 [35]
 Id. at 52.
 
 
 [36]
 Jones, 530 U.S. at 583, 120 S.Ct. 2402 (quoting Tashjian, 479 U.S. at 215-16 n. 6, 107 S.Ct. 544) (citations and quotation marks omitted).
 
 
 [37]
 Id. at 584, 120 S.Ct. 2402.
 
 
 [38]
 Id.
 
 
 [39]
 Id. at 585, 120 S.Ct. 2402.
 
 
 [40]
 Wash. Rev.Code § 29.19.055
 
 
 [41]
 State ex rel. Zent v. Nichols, 50 Wash. 508, 97 P. 728, 731 (1908). See Wash. Const. art. VI, § 8 ("... the elections for such state officers shall be held in every fourth year ... on the Tuesday succeeding the first Monday in November.").
 
 
 [42]
 Brief of Appellee Sam S. Reed at 51
 
 
 [43]
 Jones, 530 U.S. at 584-85, 120 S.Ct. 2402.
 
 
 [44]
 U.S. Const. Art. I, § 4, cl. 1See also Burdick, 504 U.S. at 433, 112 S.Ct. 2059.
 
 
 [45]
 Brief of Appellee Sam S. Reed at 52
 
 
 [46]
 Brief of Appellee-Intervenor Washington State Grange at 25
 
 
 [47]
 Id.
 
 
 [48]
 Jones, 530 U.S. at 582, 120 S.Ct. 2402.
 
 
 [49]
 Id. at 582-83, 120 S.Ct. 2402.
 
 
 [50]
 Id. at 583, 120 S.Ct. 2402.