**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

DEMOCRATIC PARTY OF HAWAII,
     *Plaintiff-Appellant*,

v.

SCOTT T. NAGO, in his official capacity as Chief Election Officer of the State of Hawaii,
     *Defendant-Appellee.*

</td>
<td>

No. 13-17545

D.C. No.
1:13-cv-00301-JMS-KSC

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, Chief District Judge, Presiding

Argued and Submitted May 4, 2016
Portland, Oregon

Filed August 15, 2016

Before: A. Wallace Tashima, Richard C. Tallman,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's summary judgment in favor of Scott Nago, in his official capacity as Chief Election Officer of the State of Hawaii, in an action brought by the Democratic Party of Hawaii challenging Hawaii's open primary system on the grounds that allowing registered voters to participate in any party's primary without formally joining or declaring support for that party, severely burdens the Democratic Party's First Amendment associational rights.

The panel first noted that the extent to which Hawaii's open primary system burdens the Democratic Party's associational rights is a factual question on which the Party bore the burden of proof. The panel held that the Party had not developed any evidence to meet this burden. The Party provided no evidence showing a clear and present danger that adherents of opposing parties determine the Democratic Party's nominees. Nor had the Party shown that Hawaii's open primary system causes Democratic candidates to moderate their policy stances. The panel concluded that absent evidence that Hawaii's system affects the Party's ability to select its nominees, the Party's facial challenge failed.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Thomas Anthony Gill (argued) and David A. Sgan, Gill, Zukeran & Sgan, Honolulu, Hawaii, for Plaintiff-Appellant.

Deirdre Marie-Iha (argued) and Marissa H. I. Luning, Deputy Solicitors General; David M. Louie, Attorney General of Hawaii; Department of the Attorney General, Honolulu, Hawaii; for Defendant-Appellee.

**OPINION**

TASHIMA, Circuit Judge:

In 2013, the Democratic Party of Hawaii (the "Democratic Party" or the "Party") brought a facial First Amendment challenge to Hawaii's open primary system. The Democratic Party seeks to limit the participants in its primary elections to its formal members or to voters who are otherwise willing publicly to declare their support for the Party. According to the Democratic Party, Hawaii's open primary system, which allows registered voters to participate in any party's primary without formally joining or declaring support for that party, severely burdens the Party's associational rights.

The Democratic Party and Scott Nago, Hawaii's chief election officer, brought cross-motions for summary judgment, both seeking judgment on the Party's First Amendment claim as a matter of law. The district court granted summary judgment to Nago. *Democratic Party of Haw. v. Nago*, 982 F. Supp. 2d 1166 (D. Haw. 2013). The Democratic Party appealed.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

### A. Hawaii's Open Primary System

In 1978, the Hawaii Constitution was amended to provide that "no person shall be required to declare a party preference or nonpartisanship as a condition of voting in any primary or special primary election. Secrecy of voting and choice of political party affiliation or nonpartisanship shall be preserved." Haw. Const. art. II, § 4. Hawaii had previously utilized a closed primary system. The purpose of the amendment was to protect voter privacy and to encourage voter participation in elections.

The Hawaii Legislature implemented the open primary by statute in 1979. The relevant statutory provisions specify that registered voters at primary polling sites "shall be issued the primary or special primary ballot for each party and the nonpartisan primary or special primary ballot. A voter shall be entitled to vote only for candidates of one party or only for nonpartisan candidates." Haw. Rev. Stat. § 12-31. Thus, voters must commit to one party's slate prior to voting; they may not choose a Republican nominee for one state office and a Democratic nominee for a different state office. Further, "a voter shall be entitled to select and to vote the ballot of any one party or nonpartisan, regardless of which ballot the voter voted in any preceding primary or special primary election." *Id.* Hawaii voters do not register as members of any political party, and the State does not keep records regarding which party's ballot any particular voter

chose in a primary election. *See id.* Political parties may not opt out of this open primary system. *See id.* §§ 12-1, 12-2.

## B.  The Democratic Party's Challenge to Hawaii's Open Primary System

In 2006, the Democratic Party amended its constitution, as follows:

> The Democratic Party of Hawai`i believes that its primary election, a state-imposed mandatory nomination procedure, ought to be open to participation of only such persons as are willing to declare their affiliation with and support for the Party, either through public registration to vote, or through maintenance of membership with the Party.  The Party further believes that the current Constitution and laws of the State of Hawai`i, by maintaining secrecy of affiliation, and by compelling the Party to admit to its nomination procedures those who may have no interest in, or actually oppose the interests, values, and platform of the Party, do violence to the Party's associational freedoms and the individual freedoms of its membership to define their own political views, guaranteed under the Constitution of the United States.

As of July 2013, the Democratic Party had approximately 65,000 formal members.  The Party generally does not terminate memberships unless the member is expelled for cause, resigns, or dies.  The Party does not require its members to pay dues.

In June 2013, the Democratic Party commenced this action, claiming that Hawaii's open primary system violates the Party's First Amendment associational rights. The Party simultaneously filed a motion for a preliminary injunction and a motion for partial summary judgment, asking the district court to find Hawaii's open primary system facially unconstitutional. Nago then filed a cross-motion for summary judgment, arguing that Hawaii's open primary system is constitutional on its face. The parties agreed that there were no genuine issues of fact and that the district court should resolve the Democratic Party's facial constitutional challenge as a matter of law.[1] The district court denied both of the Party's motions and granted summary judgment to Nago. The Democratic Party timely appealed.

## II.

We review *de novo* a district court's decision on cross-motions for summary judgment, "decid[ing] whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 930 (9th Cir. 2008). "We may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014).

---

[1] The Democratic Party has noted that, if its facial challenge to Hawaii's open primary system fails, it may bring an as-applied challenge.

## III.

The Democratic Party argues that we can decide whether Hawaii's open primary system severely burdens its associational rights as a matter of law. Thus, the Party contends that it need not adduce any evidence to substantiate the claimed severity of the burden. We disagree. Under Supreme Court and Ninth Circuit precedent, the extent of the burden that a primary system imposes on associational rights is a factual question on which the plaintiff bears the burden of proof. Because the Democratic Party has not presented any evidence to meet its burden, its facial challenge fails.[2]

## A. The Severity of the Burden That a Primary System Imposes on Associational Rights Is a Factual Issue on Which the Plaintiff Bears the Burden of Proof

"Election regulations that impose a severe burden on associational rights are subject to strict scrutiny . . . ." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). Courts uphold such regulations only if they are narrowly tailored to serve a compelling state interest. *Id.* "If a statute imposes only modest burdens, however, then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions' on

---

[2] The district court also granted summary judgment to Nago on the alternative ground that Hawaii's open primary system is facially constitutional because some political parties might embrace the system as consistent with their associational desires. *See Democratic Party of Haw.*, 982 F. Supp. 2d at 1180. Because we affirm the grant of summary judgment on the ground that the Party has failed to meet its burden of proof as to the severity of the burden on its associational rights, we do not reach this alternative holding.

election procedures." *Id.* at 452 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

Under *California Democratic Party v. Jones*, 530 U.S. 567 (2000), the severity of the burden that a primary system imposes on associational rights is a factual, not a legal, question. In *Jones*, the Supreme Court held that California's "blanket primary" system was facially unconstitutional. *Id.* at 586. Under the blanket primary system, every candidate, regardless of party affiliation, was listed on every voter's ballot. *Id.* at 570. Voters could thus choose a candidate from any party for each office. *Id.* The candidate from each party with the most votes then received his or her party's nomination for the general election. *Id.* The Court decided that this system severely burdened the associational freedom of political parties by not allowing them to exclude non-members from choosing the parties' nominees. *Id.* at 577.

To reach this ruling, the Court relied on data showing that in California, 20% of registered Democrats and 37% of registered Republicans planned to vote in the other party's primary in 1998. *Id.* at 578. An expert testified that it was "inevitable" under California's system "that parties will be forced in some circumstances to give their official designation to a candidate who's not preferred by a majority or even plurality of party members." *Id.* at 579. According to the Court, the evidence showed a "clear and present danger" that adherents of an opposing party would determine their rival's nominee. *Id.* at 578.

The Court reasoned that, as a result of crossover voting, candidates seeking nomination would be forced to take policy stances different than those of the party faithful. *Id.* at 579–80. Indeed, one of the defendants' experts reported that

candidates in blanket primary states tend to be more ideologically moderate than candidates in states with other kinds of primaries. *Id.* at 580. The record also contained evidence that "the whole *purpose* of [the blanket primary law] was to favor nominees with 'moderate' positions." *Id.* This second harm to plaintiffs' associational rights (alteration of policy stances) flowed from the first (crossover voting): the Court stated that "forced association has the likely outcome — indeed, in this case the *intended* outcome — of changing the parties' message." *Id.* at 581–82.

In *Arizona Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277 (9th Cir. 2003), we clarified that, under *Jones*, the severity of the burden that a primary system imposes on a party's associational rights is a factual issue for the district court. In *Bayless*, the Arizona Libertarian Party brought a facial challenge to Arizona's semiclosed primary system.[3] *Id.* at 1280. Under this system, voters who were unaffiliated, registered as independents, or registered as members of parties that were not on the primary ballot were permitted to choose a primary in which to vote. *Id.* Voters who were registered with a party on the primary ballot were permitted to vote only in their party's primary. *Id.* The primary ballot listed candidates for all the offices to be filled in the general election, as well as party precinct committeeperson candidates, who were elected in the primary. *Id.*

---

[3] Although the Libertarian Party argued that Arizona's primary system was unconstitutional on its face, we directed the district court to limit any remedy "to the Arizona Libertarian Party because the Democrats and Republicans are not parties to [the] suit, and because the record with respect to the impact on their associational rights has not been developed." *Id.* at 1281–82.

Although the parties asked us to decide "whether the participation of nonmembers in the selection of candidates is constitutional under" *Jones*, we declined to resolve the question as a matter of law. *Id.* at 1282. We "observe[d] that the [Supreme] Court in *Jones* treated the risk that nonparty members will skew either primary results or candidates' positions as a factual issue, with the plaintiffs having the burden of establishing that risk." *Id.* Because "the resolution of the constitutional issue turn[ed] on factual questions not decided by the district court," we "remand[ed] so that the district court [could] consider the severity of the burden this aspect of the primary system impose[d] on the Libertarian Party's associational rights" and "whether the state ha[d] sufficiently justified that burden." *Id.*; *see also Prete v. Bradbury*, 438 F.3d 949, 960 (9th Cir. 2006) (noting that "whether certain restrictions create a 'severe burden' on . . . First Amendment rights" is a "constitutional question[] of fact"). Thus, under *Jones* and *Bayless*, the extent of the burden that Hawaii's open primary system imposes on the Democratic Party's associational rights is a factual question on which the Party bears the burden of proof.[4]

---

[4] Our decision in *Democratic Party of Washington State v. Reed*, 343 F.3d 1198 (9th Cir. 2003), is not to the contrary. In *Reed*, the Court struck down Washington's blanket primary as unconstitutional on its face under *Jones*. *Id.* at 1201. The Court noted that it was "not at all clear that the plaintiffs had any 'burden of proof'" to show the challenged statute severely burdened their First Amendment rights. *Id.* at 1203. *Reed*, however, was a challenge to a blanket primary system that was, on its face, "materially indistinguishable" from the system held unconstitutional in *Jones*. *See id.* In other words, there was no need to analyze the extent of the burden imposed by Washington's blanket primary system because the Supreme Court had ruled that an identical system in California was facially unconstitutional. Because a different kind of primary system is at issue in this case, *Reed* does not apply.

## B.  The Democratic Party Has Failed to Adduce Evidence Showing the Extent of the Burden on Its Associational Rights

The Democratic Party's facial challenge fails because the Party has not developed evidence showing that Hawaii's open primary system severely burdens its associational rights. Indeed, the Party argues that such evidence is unnecessary. The Party has submitted only an excerpt from its constitution, which states that the Party prefers to limit its primary to voters who "are willing to declare their affiliation with and support for the Party, either through public registration to vote, or through maintenance of membership in the Party." Additionally, the Party claims that it has approximately 65,000 registered members, while a quarter of a million people participate in Democratic primaries in Hawaii.  The Party thus wants us to infer that the approximately 185,000 people voting in its primaries who have not formally registered with the Party are participating in crossover voting.

The Democratic Party's preference for limiting primary participants to registered Party members, coupled with the fact that more people vote in Democratic primaries than are formally registered with the Party, is not sufficient to show that Hawaii's open primary system severely burdens the Party's associational rights.   Under the blanket primary system struck down in *Jones*, when California citizens registered to vote, they listed their political affiliation. *Jones*, 530 U.S. at 570.  As a result, the Court was able to ascertain that a significant portion of voters who publicly identified with a particular political party were voting in a different party's primary. *See id.* at 578.  Hawaii, on the other hand, does not provide for partisan registration.  Thus, the 185,000 people voting in Hawaii's Democratic primaries who are not

formal Party members may nevertheless personally identify as Democrats.

Moreover, Hawaii's open primary, unlike a blanket primary, forces a voter to choose one party's primary ballot and thereby forego her opportunity to participate in a different party's primary.  In a state without partisan registration, choosing to vote in only one party's primary may constitute a valid form of party affiliation. *Cf. Clingman v. Beaver*, 544 U.S. 581, 590 (2005) (plurality opinion) ("In general, 'anyone can "join" a political party merely by asking for the appropriate ballot at the appropriate time or (at most) by registering within a state-defined reasonable period of time before an election.'" (quoting *Jones*, 530 U.S. at 596 (Stevens, J., dissenting))).

Thus, unlike in *Jones*, the Democratic Party has provided no evidence showing a "clear and present danger" that adherents of opposing parties determine the Democratic Party's nominees.[5] *See* 530 U.S. at 579.  As explained above, the lone statistic the Party cites is ambiguous at best. Likewise, the Party has not shown that Hawaii's open primary system causes Democratic candidates to moderate their policy stances. *See id.* at 579–80.  Absent evidence that Hawaii's system affects the Party's ability to select its nominees, the Party's facial challenge fails.

---

[5] Because the Democratic Party has not attempted to proffer evidence showing the extent to which Hawaii's open primary system burdens its associational rights, we do not analyze whether the primary system is narrowly tailored to compelling or important state interests.

## IV.

We hold that the extent to which Hawaii's open primary system burdens the Democratic Party's associational rights is a factual question on which the Party bears the burden of proof.  Because the Party has not developed any evidence to meet this burden, its facial challenge fails.  The district court's grant of summary judgment to Nago is

**AFFIRMED.**