**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARIZONA GREEN PARTY; CLAUDIA ELLQUIST, *Plaintiffs-Appellants*, | No. 14-15976 |
| v. | D.C. No. 2:14-cv-00375-NVW |
| MICHELE REAGAN, in her official capacity as Secretary of the State of Arizona, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted May 11, 2016
San Francisco, California

Filed September 23, 2016

Before: M. Margaret McKeown and Michelle T. Friedland,
Circuit Judges, and Joan Lefkow,[*] District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Joan H. Lefkow, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's summary judgment in favor of the Arizona Secretary of State in an action brought under 42 U.S.C. § 1983 by the Arizona Green Party and a supporter challenging the constitutionality of Arizona's filing deadline for new party petitions.

The Green Party asserted that by requiring new parties to file recognition petitions 180 days before the primary, Arizona unconstitutionally burdened those parties' First and Fourteenth Amendment rights.

Noting that the Green Party did not submit any supporting evidence with its motion for summary judgment, the panel held that the Green Party did not meet its burden of showing that Arizona's 180-day petition-filing deadline significantly burdened its constitutional rights. The panel further held that the Secretary demonstrated that the restriction served Arizona's important interest in administering orderly elections.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Julia Damron (argued) and Robert E. Barnes, Los Angeles, California, for Plaintiffs-Appellants.

James Driscoss-MacEachron (argued), Deputy State Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Defendant-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

The Arizona Green Party (the "Green Party" or the "Party"), having failed to meet the deadline for recognition as an official political party on the 2014 Arizona ballot, challenges the constitutionality of Arizona's filing deadline for new party petitions.[1] The Green Party seeks declaratory and injunctive relief against the Arizona Secretary of State (the "Secretary"), claiming that by requiring "new"[2] parties to file recognition petitions 180 days before the primary,

---

[1] Although much of the Green Party's brief is dedicated to a historical discussion of third parties in presidential elections, the Arizona rules governing the presidential election cycle are not at issue here. *See* Ariz. Rev. Stat. § 16-341(G) ("A nomination petition for the office of presidential elector shall be filed not less than sixty nor more than ninety days before the general election.").

[2] The term "new" party is something of a misnomer because parties that use this mechanism for ballot recognition need not be newly formed. For example, the Arizona Green Party has existed for many years but is still treated as a "new" party. Although a more accurate term would be "small," "minor" or "third" party, we follow the terminology in Arizona's statute.

Arizona unconstitutionally burdens those parties' First and Fourteenth Amendment rights.

Ballot access litigation follows a common pattern. The scrutiny courts employ in assessing the constitutionality of a state's election law turns on the severity the law imposes on the party or candidate's First and Fourteenth Amendment rights. The plaintiff bears the burden of showing the severity of the burden on those constitutional rights; evidence that the burden is severe, de minimis, or something in between, sets the stage for the analysis by determining how compelling the state's interest must be to justify the law in question. In this case, the Green Party chose not to present any evidence. Instead, it relied on analogies to earlier cases to argue that Arizona's 180-day deadline for filing new party recognition petitions is unconstitutional as a matter of law.

Without evidence of the specific obstacles to ballot access that the deadline imposes, the Green Party did not establish that its rights are severely burdened. At best—on this record—any burden is de minimis. By contrast, Arizona's evidence supports the interrelated deadlines that make up its election cycle. Balancing the impact of the 180-day filing deadline on the Green Party's rights against Arizona's interests in maintaining that deadline, we conclude that the Green Party has not demonstrated an unconstitutional interference with ballot access.

## BACKGROUND

Arizona election law provides three avenues for political parties to obtain state recognition, each of which requires a threshold level of political support within the state. For automatic and continued recognition, a party must have received at least five percent of votes cast in the last preceding general election or achieved a threshold number

of registered electors. A third alternative allows a party to demonstrate the requisite level of support via petition.

Arizona Revised Statute § 16-804 lays out the framework for automatic and continued recognition:

> A) A political organization that at the last preceding [applicable] general election cast . . . not less than five per cent of the total votes cast for governor or presidential electors, . . . is entitled to representation as a political party on the official ballot for state officers or for officers of such county or local subdivision.

> B) [A] political organization is entitled to continued representation as a political party on the official ballot . . . if, on October 1 of the year immediately preceding the year [of the applicable] general election . . . [or] one hundred fifty-five days immediately preceding the primary election in such jurisdiction, such party has registered electors in the party equal to at least two-thirds of one per cent of the total registered electors in such jurisdiction.

*Id*. § 16-804(A), (B). Parties that do not meet these requirements may obtain recognition by filing "a petition signed by a number of qualified electors equal to not less than one and one-third per cent of the total votes cast for governor at the last preceding general election at which a governor was elected." *Id*. § 16-801(A).

Once recognized through any of these mechanisms, parties are entitled to state-provided primary ballots as well

as a designated column of party candidates on the general election ballot.  *Id*. §§ 16-341(B), 16-502(C).  New party recognition lasts for two regularly scheduled general elections for federal office before party status must be renewed.  *Id*. § 16-801(B).

Even if a party does not qualify as officially recognized, its candidates still have the benefit of party designation, subject to some restrictions.**[3]**  Candidates who are affiliated with unrecognized political organizations can run as independent candidates and may designate their own party affiliation, which appears next to the candidate's name on the general election ballot.  *Id*. at § 16-341.  Write-in candidates may also designate a party affiliation next to their name, which is posted on the Arizona Secretary of State's official website.  *See id*. § 16-312.

The Green Party sought recognition via petition in 2014 because it lost its official status in 2013.  After the 2010 gubernatorial election, the Green Party was on notice that it had failed to garner five per cent of the vote and, on November 20, 2013, the Secretary officially confirmed that the Green Party had lost its recognized status.  At that point, the Party had approximately three months to collect signatures in support of new party recognition.  Signature gathering to obtain recognition under § 16-801 may commence as soon as a party learns that it did not qualify for automatic recognition based on votes cast or electors registered in the previous general election.  For the 2014

---

**[3]** At oral argument, counsel for the Secretary explained that the restrictions listed in § 16-341 prohibit independent candidates from circumventing the rules for county or municipal party recognition or for continued recognition under § 16-804, but that there was "no limit that I see that would stop" an independent candidate from designating the Green Party as its political affiliation on the general election ballot.

election cycle, parties petitioning under § 16-801 were required to file 23,401 signatures with the Secretary by February 27, 2014.

The 180-day petition-filing deadline has been an element of Arizona election law since 2000. *Id*. § 16-803(A) ("A petition for recognition of a new political party shall be filed . . . not less than one hundred eighty days before the primary election for which the party seeks recognition.").**[4]** The deadline is calculated by working backward from a number of nested deadlines leading up to the primary, which include:

- Calculating candidate signature requirements, *id*. §§ 16-168(G), 16-322(B);

- Filing deadlines for candidates, *id*. at §§ 16-311, 16-341;

- Mailing notice to voters on the early voting list, *id*. at § 16-544(D);

- Resolving nomination petition challenges, *id*. at § 16-351(A);

- Finalizing primary ballots for printing;

- Mailing primary ballots to uniformed and overseas voters, *id*. at § 16-544(F);

---

**[4]** Before the new party petition deadline was amended in 2000, the deadline was 140 days before the primary. Ariz. Rev. Stat. § 16-803 (2000). In 2011 and 2012, the Arizona legislature again amended § 16-803 to shift part of the task of verifying signatures from the counties to the Secretary, but the 180-day deadline remained the same. *Id*. (2011) (*amended by* S.B. 1471); *id*. (2012) (*amended by* H.B. 2033).

- Testing the electronic ballot machines, *id*. at § 16-449; and

- Early voting deadlines for the primary, *id*. at § 16-542(C).

Rather than filing a new party petition, in February 2014 the Green Party and Green Party supporter Claudia Ellquist filed a 42 U.S.C. § 1983 suit against the Secretary in federal court alleging that the February deadline was unconstitutional under the First and Fourteenth Amendments. In an effort to resolve the matter before the 2014 general election, the parties stipulated to an expedited litigation process resulting in cross-motions for summary judgment. The Green Party did not seek a preliminary injunction.

The district court granted summary judgment in favor of the Secretary. Because the Green Party did not present any evidence or controvert the Secretary's material facts, the district court found that the Green Party had failed to demonstrate how "the 180-day deadline alone, considered outside the context of the election cycle requiring it, necessarily imposes a severe burden. And they have not offered evidence—or even alleged—that the other interrelated provisions governing the election cycle impose a severe burden." Explaining that the deadline was not "unnecessary, excessive, or discriminatory," the district court concluded that "the interplay between the February deadline and [Arizona's] election scheme as a whole . . . rationally accommodates the state's administrative needs."

The Green Party did not seek expedited review on appeal, and its first brief was not filed until September 2014, long after the petition-filing deadline passed.

ANALYSIS

## I.  Mootness

The 2014 election has come and gone, so we cannot devise a remedy that will put the Green Party on the ballot for that election cycle.  All specific demands for relief related to the 2014 election are moot.  Because the Green Party will need to requalify as a new party every two election cycles (unless it reaches the § 16-804 threshold), the 180-day deadline is likely to surface again and is therefore "capable of repetition, yet evading review," *Norman v. Reed*, 502 U.S. 279, 288 (1992) (quoting *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)).  Accordingly, the challenge to that deadline's constitutionality is not moot.  We thus have jurisdiction to address the merits of the Green Party's claim on appeal.

## II.  The Balancing Test for Ballot Access

The foundation of our analysis comes from two Supreme Court cases that address the framework in ballot access cases: *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).  In *Anderson*, the Supreme Court articulated a balancing test to determine whether rules impacting ballot access pass constitutional muster:

> [A] court must . . . . first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the

> Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

460 U.S. at 789. In *Burdick*, the Court refined its analysis as to the degree of rigor required in weighing a restriction's burden on ballot access rights against the state's interest:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

504 U.S. at 434 (internal quotations and citation omitted).

We have summarized the Supreme Court's approach as a "balancing and means-end fit framework." *Pub. Integrity All., Inc. v. City of Tucson*, — F.3d —, 2016 WL 4578366, at *3 (9th Cir. 2016) (en banc). This is a sliding scale test, where the more severe the burden, the more compelling the

state's interest must be, such that "a state may justify election regulations imposing a lesser burden by demonstrating the state has important regulatory interests." *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 729–30 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 823 (2016) (internal citations, alterations, and quotation marks omitted).

## III.     Burdens on Ballot Access

We begin by acknowledging the importance of third parties and the constitutional interests implicated by limiting their access to the ballot.  As the Supreme Court emphasized in *Norman*:

> [T]he constitutional right of citizens to create and develop new political parties . . . . derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences. To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation.

502 U.S. at 288–89 (internal citations omitted).

These principles led the Court to strike down a series of Ohio laws that made it virtually impossible for any party other than the Democratic and Republican parties to appear on the ballot.  As the Court observed, "[t]he right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an

equal opportunity to win votes." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968).

More specifically, the Supreme Court, and many lower courts, have recognized that—in general—timing obstacles can pose unconstitutional barriers to ballot access:

> When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded. Volunteers are more difficult to recruit and retain, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign.

*Anderson*, 460 U.S. at 792; *see also Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 586–87 (6th Cir. 2006) ("Deadlines early in the election cycle require minor political parties to recruit supporters at a time when the major party candidates are not known and when the populace is not politically energized. . . . Early deadlines also have the effect of ensuring that any contentious issue raised in the same year as an election cannot be responded to by the formation of a new political party. The combination of these burdens impacts the party's ability to appear on the general election ballot, and thus, its opportunity to garner votes and win the right to govern." (internal citations omitted)). For all of these reasons, we can imagine how an early filing deadline could impact the Green Party's rights, but that does not mean that Arizona's deadline necessarily poses an unconstitutional burden.

The relevant inquiry is whether "[the state]'s ballot access requirements seriously restrict the availability of

political opportunity." *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994). The Green Party bears the initial burden of showing such restrictions. *See id.* In *Munro*, we made clear that parties alleging a severe burden must provide evidence of the specific burdens imposed by the law at issue. *See id.* "[T]he extent of the burden that a primary system imposes . . . is a factual question on which the plaintiff bears the burden of proof." *Democratic Party of Haw. v. Nago*, — F.3d —, 2016 WL 4269872, at \*2 (9th Cir. 2016). In challenging ballot access regulations, parties must articulate the nature of the burden, which "should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' [parties] can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) (internal citations omitted).

In its complaint, the Green Party alleges that the February deadline greatly increases costs faced by third parties, was not designed to allow a reasonably diligent minor party to qualify for ballot access, and requires minor parties to gather signatures when the "mind of the general public and the attention of the media is not focused on the general elections." These may well be legitimate complaints, but the Green Party did not submit any supporting evidence with its motion for summary judgment.

Instead, the Party chose to argue that the deadline was unconstitutional as a matter of law. As a result, "[a]ny effort to apply the balancing standard to this case is hamstrung by a lack of evidence. . . . Without any evidence regarding the practical consequences of the [deadline], we find ourselves in the position of Lady Justice: blindfolded and stuck holding empty scales." *Ariz. Libertarian Party*, 798 F.3d at 736 (McKeown J., concurring) (internal citations omitted).

For example, we do not know how difficult it was for the Green Party to collect the required signatures, how much the signature-gathering effort cost, whether petition efforts diverted the Party's resources from other endeavors, whether the "mind of the general public" was diverted from the election at the time the Party sought to collect signatures, how difficult it has been for new parties to comply with the deadline historically, or even if the Party attempted to comply with the deadline at all. Without evidence, the burdens identified in the Green Party's complaint are purely speculative.

In the absence of specifics, the Green Party relies heavily on a district court decision holding an Arkansas filing deadline unconstitutional. *See Citizens to Establish a Reform Party in Ark. v. Priest*, 970 F. Supp 690 (E.D. Ark. 1996). Unlike the Green Party, the Arkansas Reform Party presented considerable testimony about the burdens of the deadline, including the analysis of two experts in minor political parties and ballot access. *Id*. at 694. For example, the plaintiffs presented testimony that "[t]hey experienced difficulty collecting petition signatures in the winter time due to cold temperatures and inclement weather," *id*. at 692, circumstances that would likely not impair signature gathering in early winter in most parts of Arizona. The extensive evidence provided in *Priest* stands in stark contrast to the bare record here.

Analogy and rhetoric are no substitute for evidence, particularly where there are significant differences between the cases the Green Party relies on and the Arizona election system it challenges. The Supreme Court and our sister circuits have emphasized the need for context-specific analysis in ballot access cases. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 578 (2000) ("The *evidence* in this

case demonstrates that under California's blanket primary system, the prospect of [harm] is far from remote—indeed, it is a clear and present danger." (emphasis added)); *Blackwell*, 462 F.3d at 587 ("In determining the magnitude of the burden imposed by a state's election laws, the Supreme Court has looked to the associational rights at issue, including whether alternative means are available to exercise those rights; the effect of the regulations on the voters, the parties and the candidates; *evidence of the real impact the restriction has on the process*; and the interests of the state relative to the scope of the election." (emphasis added)); *Nago*, 2016 WL 4269872, at \*2 ("Because the . . . Party has not presented any evidence to meet its burden, its facial challenge fails.").

The balancing test rests on the specific facts of a particular election system, not on "strained analog[ies]" to past cases. *Munro*, 31 F.3d at 762. That filing deadlines of similar lengths may prove unconstitutionally burdensome in the context of some election schemes does not eliminate the need for evidence that a severe burden was imposed by the filing deadline in *this* case. *See id.* ("The problem . . . is that, while the [Party] claim[s] to suffer exactly the same disabilities that the Court found unconstitutional in *Anderson*, [its] situation is vastly different."). This is not to say that in a most unusual circumstance a ballot regulation could not be deemed unconstitutional on its face without further evidence. But such is not the case here.

The Green Party cannot prevail by "simply parrot[ing] the language of [earlier cases] without demonstrating how it actually applies to [the challenged] scheme." *Id.* at 763. Significantly, we explained in *Nader* that "[t]o determine the severity of the burden, . . . past candidates' ability to secure a place on the ballot can inform the court's analysis" of

whether a state election law passes constitutional muster. 531 F.3d at 1035; *id.* at 1038 (finding a severe burden where historical evidence showed that after changing the filing deadline, no independent candidate had appeared on the ballot). Here, recent historical evidence shows that non-major parties, including the Green Party, have been able to gain official party recognition in Arizona despite the 180-day filing deadline. What little evidence we do have therefore suggests that Arizona's deadline does not severely burden constitutional rights.

Absent evidence of the particular burdens imposed in this case, we conclude that, at best, the 180-day petition-filing deadline imposes a de minimis burden on constitutional rights.

## IV.    Arizona's Legitimate Interest

Because the record demonstrates that the filing deadlines imposes no more than a de minimis burden on the Green Party's constitutional rights, Arizona need only demonstrate that the filing deadline serves "important regulatory interests." *Burdick*, 504 U.S. at 434 (internal quotations omitted). The evidence Arizona presented more than satisfied this burden.

Unlike the Green Party, the Secretary presented substantial evidence that details the processes for ballot access and the rationale behind each step in the timeline at each stage of the election process. The nested deadlines leading up to the Arizona primary, as well as the tasks that must be accomplished between the primary and general election, reflect an effort by the state to achieve the important goal of orderly elections. For example, the number of required signatures for independent candidate petitions depends on the number of registered voters who are

not affiliated with a recognized party. For this reason, the state must know how many recognized parties will appear on the ballot before setting the candidate signature requirements, at which point candidates have two months to collect signatures. As Arizona's Assistant State Election Director explained, "[i]f the petition deadline to obtain recognized party status were moved to a later date, new party candidates would have little or no meaningful opportunity to obtain the requisite number of signatures to qualify for the party's primary ballot." She also noted that in late May, Arizona counties mail a list of recognized political parties holding primaries in a particular election to the more than 1.9 million early registered voters, and that adding additional parties after the mailing deadline could therefore impose considerable burdens on the counties and lead to voter confusion. Also, in preparation for the primary, ballots must be translated into Spanish and several Native American languages, a process that takes time. (See above for the statutory scheme regulating the pre-election deadlines).[5]

Even if Arizona could "streamline its system" and prepare for the primary in a shorter period of time, it is not required to "adopt a system that is the most efficient possible." *Munro*, 31 F.3d at 764. On this record, we conclude that Arizona's filing deadline serves "important regulatory interests," *Burdick*, 504 U.S. at 434, that outweigh any de minimis burden the deadline may impose on the Green Party's rights.

---

[5] The Green Party does not challenge the time allotted for candidates to collect signatures, the time needed to print and distribute ballots, or any of the other interconnected deadlines leading up to the primary.

## CONCLUSION

The Green Party has not met its burden of showing that Arizona's 180-day petition-filing deadline significantly burdens constitutional rights, while the Secretary has demonstrated that the restriction serves Arizona's important interest in administering orderly elections. The district court therefore correctly granted summary judgment in favor of the Secretary.

**AFFIRMED.**